**FINANCIAL INSTITUTIONS
RETIREMENT FUND,
Plaintiff,**

and The Federal Home Loan Bank of Boston, the Federal Home Loan Bank of New York, the Federal Home Loan Bank of Pittsburgh, the Federal Home Loan Bank of Atlanta, the Federal Home Loan Bank of Cincinnati, the Federal Home Loan Bank of Indianapolis, the Federal Home Loan Bank of Chicago, the Federal Home Loan Bank of Des Moines, the Federal Home Loan Bank of Dallas, the Federal Home Loan Bank of Topeka, the Federal Home Loan Bank of San Francisco, and the Federal Home Loan Bank of Seattle, Intervenors/Plaintiffs,

v.

**OFFICE OF THRIFT SUPERVISION and T. Timothy Ryan, Director, Office of Thrift Supervision, Defendants.**

Thomas A. BARNES, Barry S. Burke, Ronald B. Carreker, Charles A. Deardorff, Allen Dermody, Bill Durbin, Jane Marie Johnson, Ronald R. Lake, Penny D. Marshall, Office of Thrift Supervision, and T. Timothy Ryan, Director, Office of Thrift Supervision, Counterclaim Plaintiffs,

v.

James R. FAULSTICH, Ronald R. Morphew, John W. Bagwill, Jr., George M. Barclay, John A. Becker, J.C. Benage, Leo B. Blaber, Jr., James M. Cirona, Ramiro Luis Colon, Jr., Thurman C. Connell, Brian D. Dittenhafer, Lyle R. Grimes, Michael A. Jessee, Jerry H. Lassiter, Frank A. Lowman, Ellen Ann Roberts, James D. Roy, Robert E. Showfety, Robert F. Stoico, Charles L. Thiemann, Norman L. Tirey, Roy E. Webber, and John B. Zanetti, individually and as Directors of the Financial Institutions Retirement Fund, Counterclaim Defendants.

No. 90 Civ. 6895 (GLG).

United States District Court,
S.D. New York.

July 18, 1991.

Patterson, Belknap, Webb & Tyler, New York City (Thomas C. Morrison, Karen Stefflre, of counsel), for plaintiff.

Kirkpatrick & Lockhart, Washington, D.C. (Charles Lee Eisen, Christopher M. McMurray, of counsel), Kirkpatrick & Lockhart, Pittsburgh, Pa. (William T. Cullen, of counsel), Richards Spears Kibbe & Orbe, New York City (Lee S. Richards, of counsel), for intervenors/plaintiffs.

Groom & Nordberg, Washington, D.C. (William F. Hanrahan, Gary M. Ford, of counsel), Office of Thrift Supervision, Jersey City, N.J. (Eric Levine, of counsel), for defendants and counterclaim plaintiffs.

## OPINION

GOETTEL, District Judge:

This case presents a very unique situation involving the rights to surplus cash accumulated by a multi-employer pension fund established by various financial institutions, including savings and loans, savings banks, and commercial banks. The novelty of this case is not limited to the legal issues before us. Indeed, in light of today's economy, we had thought that terms surplus cash and financial institutions were mutually exclusive. Perhaps these same institutions that are in such dire financial straits (not to mention their legal quandaries) would be better served by permitting the pension fund's directors to handle their corporate finance as well.

## I. FACTS

Plaintiff Financial Institutions Retirement Fund (the "Fund") is a pension fund established in 1943 to serve various financial institutions, such as savings and loans, savings banks, and commercial banks. The Fund provides retirement benefits to employees of the covered financial institutions. The Fund has some 437 participating employers and there are approximately 36,000 employees entitled to such benefits, 10,000 of whom are currently retired.

Among the participating employers are the twelve Federal Home Loan Banks (the "Banks") established in 1932 pursuant to the Federal Home Loan Bank Act. Until 1989, the Banks were essentially self-regulated, although in 1986 the Federal Home Loan Bank Board (the "FHLBB") established the Office of Regulatory Activities (the "ORA") to assist in its examination of the operations of the individual thrift institutions. In 1989, however, both the FHLBB and the ORA were abolished by Congress through the passage of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"). Pub.L. No. 101–73, 103 Stat. 183–553.

FIRREA's principal goal was to combat the crisis in the thrift industry. *See United States v. Gaubert,* —— U.S. ——, 111 S.Ct. 1267, 1271 n. 1, 113 L.Ed.2d 335 (1991). One major development in this regard was the creation of a new regulatory body, the Office of Thrift Supervision ("OTS"). While the Banks were essentially self-regulated prior to this time, FIRREA transferred many of these responsibilities to OTS. As part of this transfer of responsibilities, FIRREA also required that some 2,500 of 5,500 Bank employees be transferred to the employ of OTS. The transferred employees, by and large, were those employees who had previously engaged in regulatory activities for the Banks.

With respect to the Fund, the parties agree that FIRREA required the Banks to continue paying both the salaries and benefits of the transferred employees up until March 31, 1990. Pub.L. No. 101–73, §§ 722–23, 103 Stat. 426–28. After that date, OTS clearly was responsible for the

employees' salaries. As to the benefits, including pension benefits, if OTS chose to participate in the Fund it became responsible for making contributions on the transferred employees' behalf. While OTS did choose to join the Fund, it failed to make any of the required contributions. This action was brought in response to OTS's inaction.

The Fund is financed by quarterly employer contributions. These employer contributions are commingled and the entirety of the Fund's assets is available to satisfy any impending obligations. In July 1987, the Fund reached what is known as "full funding," a position recognized by the Internal Revenue Service. This means that the assets of the Fund exceeded the actuarially determined employer liabilities for the Fund's current beneficiaries. This surplus was due to the Fund's extremely successful investments. In an effort to permit the various employers to utilize this surplus, the Fund first calculated the surplus to which each employer was entitled based on contributions and potential liabilities. The Fund then decided, with Congressional approval, to permit employers with surpluses to offset their future contributions against these surpluses since the employers could not remain in the plan and utilize the surplus for any purpose other than employee benefits.[1] The surpluses are denominated Future Employer Contribution Offsets ("FECO"). Once an employer's FECO balances are reduced to zero, the employer is again required to make quarterly contributions.

The Banks were among the employers with FECO balances. After the Banks stopped contributing (actually, they ceased offsetting their surplus) for the transferred employees pursuant to the date established by FIRREA, the Fund billed OTS for its quarterly contributions on behalf of the transferred employees. As noted, OTS refused to pay, claiming that the Banks' FECO balances should be apportioned between the transferred and non-transferred employees. Thus, OTS claims entitlement to the Banks' FECO balances to offset its contributions for the transferred employees. Thereafter, a Special Committee of the Fund's Board of Directors met to discuss the issue,[2] concluding that OTS was wrong and that the FECO balances belonged exclusively to the Banks. OTS persisted in its position, however, and has not made any contributions.

In October 1990, the Fund instituted this action seeking a declaration that neither FIRREA nor ERISA (the Employees' Retirement Income Security Act of 1974) requires the transfer of the FECO balances to OTS. Subsequently, the Banks themselves moved to intervene as plaintiffs and the motion was granted.[3] All plaintiffs then moved for summary judgment, which is one of the motions before us. In their responsive papers to the summary judgment motions, defendants claimed, *inter alia*, that the motions were premature because little, if any, discovery had taken place. Specifically, defendants asserted that discovery was needed on the question of whether the Fund's directors breached their fiduciary duties in allocating the FECO balances to the Banks. In reply, plaintiffs suggested that OTS lacked standing to question the actions of the directors. Moreover, plaintiffs argued that the directors' decision was based on advice of counsel and this advice, therefore, was

---

**1.** Although the parties did not address this, one apparent reason for permitting employers to offset future contributions with their surpluses is that they could have left the Fund with their surpluses, established their own plan, satisfied any obligations to their employees, terminated the plan, and then kept the surpluses. This is a dramatic oversimplification of the procedure, but the bottom line is that the Fund's decision to permit offsets offered an incentive to employers not to leave.

**2.** The Board of Directors is comprised of twenty-five members, including the presidents of the twelve Federal Home Loan Banks. The special committee of the Board, however, excluded these twelve individuals, as well as the president of the Fund, leaving a committee of twelve. However, the committee's recommendation was then passed on to a vote of the full Board.

**3.** Hereafter, any reference to "plaintiffs" refers to both the Fund and the Banks.

privileged.[4]

Before any of these motions were resolved, counterclaims were filed by the named defendants. Defendants' counsel also filed what purport to be counterclaims on behalf of nine employees of OTS who had formerly been the Banks' employees. These counterclaims are asserted against the named plaintiffs, as well as against the twenty-five members of the Fund's Board of Directors, who had not previously been named as parties to the dispute. The former employees' attempt to intervene responds to plaintiffs' claims that OTS, as a participant employer, lacks standing to challenge the directors' fiduciary actions. After plaintiffs challenged the efficacy of simply joining the employees without leave of court, a formal motion to intervene was filed. At the same time, plaintiffs filed motions to dismiss the counterclaims.

While this is all extremely confusing (even to this court), the bottom line is that we have before us a motion to intervene by OTS employees who were formerly Bank employees, plaintiffs' motion to dismiss all counterclaims, and plaintiffs' motion for summary judgment.

## II. DISCUSSION

### A. *Motion to Intervene*

■ As noted, employees of OTS wish to intervene to assert various claims of breach of fiduciary duty against the Fund's directors and one such claim against the Banks themselves. This motion is made alternatively under rules 13, 20, and 24 of the Federal Rules of Civil Procedure. We find that intervention pursuant to rule 24 is proper and the motion is hereby granted.

Rule 24(a)(2) provides for intervention as of right:

[W]hen the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposi-

tion of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a)(2). The party seeking intervention must establish: (1) an interest in the subject matter of the action, (2) that the disposition of the action may impair or impede its interest, and (3) that the interest is not being adequately represented by existing parties. *See H.L. Hayden Co. v. Siemens Medical Sys., Inc.,* 797 F.2d 85, 87–88 (2d Cir.1986). Plaintiffs claim that the employees seeking intervention cannot meet these criteria since they have no interest in the action and, even if there is such an interest, OTS can protect it.

The interest the employees seek to protect is their interest as beneficiaries of a pension plan who fear injury from the Fund's directors' alleged breaches of their fiduciary duties. Before focusing on whether such an interest exists, we note that if it does, OTS cannot adequately protect it. As plaintiffs themselves argued (albeit in another context), any claim of breach of fiduciary duty runs in favor of the employee beneficiaries, not employers participating in the plan. The key question at this juncture, however, is whether the employees have an interest in the subject matter of the action, which is directly related to the arguments raised on plaintiffs' summary judgment motion. While plaintiffs contend that the employees have no interest in this case since their pension rights will not be affected by the resolution of this action, the employees argue that they have the right to claim a breach of fiduciary duty whether they have been injured or not. Ultimately, of course, we must (and we do) resolve this issue of fiduciary duty. *See infra* pp. 1308–1310. It would be futile, however, to tentatively resolve the question as it pertains to an intervention motion when the ultimate resolu-

---

**4.** While the summary judgment motions were *sub judice,* defendants sought discovery, but plaintiffs apparently persisted in their claim of privilege. Motions to compel and for a protective order were then filed by the respective parties. We note that plaintiffs did offer defen-

dants a redacted client memo prepared by its counsel on the issue, but defendants considered this insufficient. In addition, depositions of at least three directors did take place, with limitations on their scope imposed by plaintiffs.

tion of the issue is pending before us on summary judgment. Thus, we will assume that the employees have the necessary interest in this action to require intervention pursuant to rule 24(a)(2). In any event, we would allow intervention at our discretion under rule 24(b) since the intervenors' claims have common questions of law and fact to those asserted in the underlying dispute. *See* Fed.R.Civ.P. 24(b).

### B. *Motion for Summary Judgment & to Dismiss Counterclaims*

We will simultaneously address plaintiff's motions for summary judgment and to dismiss counterclaims since they focus on the same issues.

The principal issue in this suit is whether the Banks or OTS are entitled to the FECO balances. In their motions, plaintiffs argue that neither FIRREA nor ERISA provides any authority on the issue and, therefore, upon the advice of counsel, the Fund's directors concluded that the Banks were entitled to the surplus. Plaintiffs first state that this decision, regardless of in whose favor it was made, has no effect on the transferred employees because their rights remain protected. In addition, plaintiffs state that if the Fund's investments had been less profitable, the Banks would have been forced to remit any funds needed to satisfy the Fund's obligations. Therefore, since the Banks bore the risk of unfavorable investments, they claim entitlement to the benefit of favorable investments.[5]

■ In response, OTS initially argues that the summary judgment motion is pre-

mature since there has not been an adequate opportunity for discovery. Rule 56(f) of the Federal Rules of Civil Procedure provides that a court may refuse to entertain an application for summary judgment if it appears that the opposing party cannot present essential facts in its defense because of inadequate discovery. In raising such an issue, the opposing party must submit an affidavit explaining the facts that are sought, how they are to be obtained and, perhaps most importantly, how these facts are expected to create a genuine issue of material fact. *See Hudson River Sloop Clearwater, Inc. v. Department of the Navy*, 891 F.2d 414, 422 (2d Cir.1989).

OTS contends that since the Fund's directors claim they relied on the advice of counsel in reaching their decision, and since plaintiffs have raised the attorney-client privilege as to this issue, the motion for summary judgment must be denied. We disagree. First of all, some directors have been deposed, albeit with limitations. Moreover, we do not believe the crucial issue in this case to be whether the directors acted within the scope of their fiduciary obligations in reaching their decision. Rather, the principal issue to be resolved is the entitlement to the FECO balances, which is a question of legal entitlement, not fiduciary duty. Finally, even if this was a question of whether the directors had breached their fiduciary duties, we find no such breach and further discovery would not change that result. Thus, since we find that defendants have failed to establish that the information they seek will create a genuine issue of material fact, we can proceed to address the merits of the

---

5. One additional argument plaintiffs raise is that the Fund's policy in situations involving transfers of employees, as in this action, is to permit the surplus to remain with contributing employer. On the other hand, if the contributing employer had been merged with another employer, such that only one employer remained, the Fund's alleged policy is to permit the new employer to utilize the surplus to offset future contributions. This is precisely what happened when ORA, which had been a participating employer, was abolished by FIRREA and its employees transferred to OTS. ORA ceased

to exist as a separate entity; consequently, its FECO balances were transferred to OTS. Notwithstanding the suggestion that a formal Fund policy existed (plaintiffs offer examples of past applications of the policy), the fact that it was never memorialized suggests that such decisions are most likely rendered on an individual basis. Thus, we will not credit plaintiffs' argument. In the same light, however, we do not suggest that the mere fact that the Fund's decision may have issued on an *ad hoc* basis does not render the decision contrary to law.

litigation.[6]

■ The parties agree, as do we, that neither FIRREA nor ERISA specifically addresses this issue. Nonetheless, we find persuasive authority suggesting that the surplus belongs to the contributing employers. ERISA and the Fund's Regulations permit a participating employer in a multi-employer plan to withdraw from the plan and create a new plan, taking its surplus with it. This point is uncontroverted.[7] Of course, ERISA requires the plan to be left with sufficient assets to meet its obligations. *See* 29 U.S.C. § 1058. The employer who has left can then pay off its covered employees, terminate the plan, and keep the surplus. *See Pollack v. Castrovinci,* 476 F.Supp. 606, 617 (S.D.N.Y.1979), *aff'd,* 622 F.2d 575 (2d Cir.1980); *see also In re C.D. Moyer Co. Trust Fund,* 441 F.Supp. 1128, 1132 (E.D.Pa.1977) ("employees will continue to be protected to the extent of their specific benefits but will not receive any windfalls due to the employer's mistake in predicting the amount necessary to keep the Plan on a sound financial basis"), *aff'd,* 582 F.2d 1275 (3d Cir.1978).[8] The fact that the Fund's regulations may prevent this from occurring as a practical matter, *see infra* p. 1309, is not an issue we need presently address. Instead, the crucial factor is that there is nothing to prevent the foregoing from occurring, with the surplus reverting back to the employer. This suggests that the surplus is actually the employer's property, not that of the employees for whose benefit a plan was established. By analogy, the FECO balances in the case at bar belong to the contributing employers, not the transferred employees.

■ We are also persuaded by plaintiffs' argument that the Banks would be required to satisfy any deficit that would have resulted from poor investment experience. For example, if the Fund had lost money and then the employees were transferred from the Banks to OTS, we tend to doubt that OTS would be willing to contribute the funds required to prevent a default on any obligations owed to the transferred employees. If the Banks bear the burden of poor investments, they should be entitled to the benefits of favorable experiences. We must reiterate, however, that even though the Banks may be entitled to the surplus for purposes of offsetting contributions, this does not permit them to utilize the surplus for personal purposes. Rather, as long as the Banks remain in the Fund, the money can only be used to either pay employees or offset future contributions.[9]

---

**6.** The question of breach of fiduciary duty was initially raised by OTS in opposing the summary judgment motions. In its reply papers, however, before the OTS employees had sought intervention, plaintiffs pointed out that OTS, as a participating employer, had no standing to assert such a breach of duty. *See Tuvia Convalescent Center, Inc. v. Nat'l Union of Hosp. & Health Care Employees,* 717 F.2d 726, 730 (2d Cir.1983) (29 U.S.C. § 1132, which is the exclusive grant of standing under ERISA, excludes employers); *see also Carl Colteryahn Dairy, Inc. v. Western Pa. Teamsters & Employers Pension Fund,* 847 F.2d 113, 119 (3d Cir.1988) (no fiduciary duties owed to employers), *cert. denied,* 488 U.S. 1041, 109 S.Ct. 865, 102 L.Ed.2d 989 (1989). As previously discussed, however, the employees subsequently sought intervention and we have just granted that motion. Thus, the issue of breach of fiduciary duty is now properly before us.

**7.** In fact, this is the argument raised by OTS in suggesting that its employees will be injured if the FECO balances remain with the Banks.

**8.** We admit that most of these cases arise in the context of a single employer plan being terminated, which is not before us. *See* 29 U.S.C. § 1344(d)(1). Nonetheless, the analogy remains appropriate, especially since it is possible for employers to leave the Fund and establish a single employer plan.

**9.** Plaintiffs also argue that since FIRREA only required the Banks to pay the benefits of the transferred employees for a limited period of time, the surplus reverted to the Banks at the expiration of that period. We are not persuaded by this argument. The fact that the statute fixes the date upon which the Banks were absolved of responsibility for the transferred employees does not establish the rights to the surplus. Congress simply did not address the issue. While this court has never been reticent about recognizing Congress' shortcomings, we have only done so when we felt it was deserved. In this instance, the fact that FIRREA does not provide for the rights to the surplus is hardly remarkable in light of the numerous other issues Congress was faced with when drafting the statute. Most likely, Congress was simply unaware of the potential problem.

Besides the foregoing, plaintiffs reiterate that there is absolutely no risk to the Fund or the transferred employees by their actions, which is the paramount concern of ERISA. Since this ties in directly to the employees' counterclaims, and plaintiffs' motion to dismiss these counterclaims, we will now address them.

OTS first raised the issue of breach of fiduciary duty in opposing the summary judgment motion. OTS claims that if the directors' decision was tainted, this court could not issue the declaratory judgment sought by plaintiffs, citing the "clean hands" doctrine. Thereafter, ten counterclaims were asserted by the defendants and the intervening employees. The first six counterclaims, though raising slightly different issues, are asserted by the employees against either the Fund's directors, the Banks, or both, and essentially suggest that the decision to allocate the surplus to the Banks was a breach of the fiduciary duties outlined in ERISA. Counterclaim seven alleges that the Fund and its directors discriminated against the OTS employees transferred pursuant to FIRREA. Similarly, the eighth counterclaim, asserted by OTS against the Fund and its directors, states that OTS itself was not dealt with equitably. Finally, the ninth and tenth counterclaims are asserted by OTS against the Banks, with one claim being that the Banks breached an implied contract with all of the Fund's participating employers and the final claim being based on a theory of unjust enrichment. The focus, however, is on the issue of fiduciary duty and whether the plaintiffs' actions were permissible.

■ The first argument raised by plaintiffs is that even these employees have no standing to assert a breach of fiduciary duty. Article III standing requires the plaintiff to "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (citing *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982)). There is no dispute that OTS employees will receive all the benefits to which they are entitled, regardless of who receives use of the surplus. However, the employees suggest that there may be injury to the Fund if the Banks retain the surplus, leave the plan in favor of a new plan, terminate that plan, pay the beneficiaries, and keep the surplus. Plaintiffs contend that as a practical matter, this could never happen since there are only about two years' worth of FECO balances remaining and the Fund's regulations have a five-year withdrawal provision. Nonetheless, even if the Banks could withdraw immediately, standing does not exist based on speculation as to what may or may not occur in the future. *See Kelly v. Chase Manhattan Bank*, 717 F.Supp. 227, 237 (S.D.N.Y.1989). Finally, we find OTS's argument rather disingenuous since if OTS gets what it wants, *i.e.*, the FECO balances, it could do precisely what it fears the Banks might do.

However, the employees contend that one has standing to assert a violation of ERISA's fiduciary obligations even if the plaintiff will not experience personal or pecuniary injury. While it is true that ERISA permits a civil action by a beneficiary to enjoin any act or practice which violates either ERISA or the pension plan itself, 29 U.S.C. § 1132(a)(3), the cases cited by the employees generally involve situations where the plan's assets are somehow at risk. As noted, the potential for such losses in the case at bar is, at most, extremely remote. Thus, we find that the employees lack standing to assert these claims of breach of fiduciary duty.

■ Even assuming the employees have standing to assert such breaches, the next inquiry is not simply whether or not the fiduciary duties were violated. Rather, we must first determine whether the decision rendered by the Fund's directors involved their fiduciary responsibilities. The mere fact that a decision may affect a pension plan does not make it a fiduciary decision under ERISA. *See Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1158

(3d Cir.1990). In this regard, ERISA provides that:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Moreover, ERISA is replete with statements that the fiduciary's duties are to protect the assets of the plan for the plan beneficiaries. 29 U.S.C. §§ 1103(c), 1104(a)(1). In this connection, we do not believe the directors' decision involved these types of obligations. First, the beneficiaries cannot be injured since the decision only affects the amount certain participating employers must contribute. Moreover, the assets of the plan are not at risk because the amount in the Fund remains constant regardless of who is entitled to the FECO surpluses. The decision, in fact, has no impact upon the plan itself.

■ Assuming the directors' decision was a fiduciary decision, the question then becomes whether there has been any breach of that duty. The statute states that:

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, and—
>
> (A) for the exclusive purpose of:
>
> (i) providing benefits to participants and their beneficiaries; and
>
> (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a). Under these parameters, we do not see how the Fund's directors could possibly have violated any fiduciary duties. Their decision does not affect the Fund's assets, nor does it affect any of the beneficiaries' rights. The sole import of the decision, and this is the crucial issue before us, is entitlement to the surplus for purposes of offsetting contributions. In this regard, OTS suggests that since the Fund's twenty-five directors include the presidents of the twelve Banks, there must have been some collusive influence. Had the Fund and the Banks not come to court seeking a declaration as to whether the Banks were entitled to the surplus, there might be some merit to this argument (although no evidence of it has been adduced). However, what actually happened is that the decision was made, OTS refused to make contributions, and this action was filed. There simply is nothing more that the fiduciaries could have done in such a situation and nothing more that any reasonably prudent person would have done. *Cf. Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112, 109 S.Ct. 948, 955, 103 L.Ed.2d 80 (1989) ("trustee who is in doubt as to the interpretation of the instrument can protect himself by obtaining instructions from the court"). In fact, if the directors' decision had been to the contrary and the balances allocated to OTS, the issue would still be before this court. For all these reasons, we find that there has been no breach of any fiduciary obligation by the plaintiffs and that they are entitled to summary judgment.[10]

## III. CONCLUSION

Plaintiffs are entitled to summary judgment and a declaration that neither ERISA

---

**10.** One final issue raised by OTS is that this court lacks jurisdiction to award damages against the United States government, of which OTS is a part, based on an express contract. 28 U.S.C. § 1346(a)(2). We find this argument without merit since our decision only establishes the rights to an existing surplus. The ancillary fact that OTS may now be forced to kick in its proportionate share, assuming it remains in the Fund, does not change this result. *See Ten-*

*nessee v. Dole*, 749 F.2d 331, 336 (6th Cir.1984), *cert. denied*, 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985). This simply is not the type of case contemplated by the Tucker Act, 28 U.S.C. § 1491, which gives jurisdiction over such matters to the Court of Claims because of its "special competence and experience in cases involving interpretation and review of government contracts." *Tennessee v. Dole*, 749 F.2d at 336.

nor FIRREA requires the allocation of the FECO balances to OTS. Moreover, for the reasons enunciated, the motions to dismiss counterclaims one through six involving breaches of fiduciary duty are granted. As to counterclaims seven and eight, which assert that the Fund and its directors treated the employees transferred to OTS, as well as OTS itself, unfairly, the foregoing analysis also resolves these claims. The OTS employees cannot be harmed by the Fund's decision and, therefore, lack standing to raise such a claim. OTS itself lacks standing if its claim is based on a fiduciary obligation. If not, OTS cannot state a claim for unfair treatment because plaintiffs came to court seeking a declaration of rights before OTS actually made any contributions. Finally, counterclaims nine and ten must be dismissed because a claim upon which relief can be granted has not been asserted. The allegations that the Banks have breached an implied contract with OTS and that the Banks have been unjustly enriched are insufficiently alleged and cannot stand in light of our foregoing analysis.

SO ORDERED.