RESOLUTION TRUST CORPORATION,
as Receiver of Sooner Federal Savings Association, Plaintiff–Appellee,

v.

FINANCIAL INSTITUTIONS RETIRE-MENT FUND, in its capacities as a pension plan and trust and as plan sponsor of The Comprehensive Retirement Program; The Bank of New York, as Trustee of The Comprehensive Retirement Program, Defendants–Appellants.

No. 95–5016.

United States Court of Appeals,
Tenth Circuit.

Dec. 28, 1995.

---

Thomas C. Morrison (Blair Axel, Patterson, Belknap, Webb & Tyler LLP, New York City; and Mark Edmondson, Crowe & Dunlevy, Tulsa, Oklahoma, with him on the briefs), Patterson, Belknap, Webb & Tyler LLP, New York City, for Defendants–Appellants.

Richard B. Noulles (Richard H. Mounts and Jonathan B. Taylor, Resolution Trust Corporation, Washington, DC, with him on the brief), Gable & Gotwals, Tulsa, Oklahoma, for Plaintiff-Appellee.

Before MOORE, BRORBY, and EBEL, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

The issue presented by this case is whether the Resolution Trust Corporation, as successor to a failed thrift institution, can recover an actuarially determined sum known as "Future Employer Contribution Offsets" (FECO) attributable to the failed thrift as an employer in a multiple-employer pension benefit plan under ERISA. The district court treated the FECO as discrete funds and awarded them to RTC under a common law unjust enrichment theory. We hold the award of the judgment to the RTC violated the exclusive benefit rule of ERISA and reverse.

Defendant, Financial Institutions Retirement Fund (FIRF), is a multiple-employer pension benefit plan under ERISA. The fund is a single plan, meaning all of its 360 participating employers pay into, and all of its approximately 35,000 employees benefit from, one single fund. The plan was established in 1943, and its corpus is comprised of assets which fluctuate in value in accord with economic trends. Because of favorable market conditions, the capital value of those assets grew, and FIRF declared the plan had reached "full funding" in 1987. As a result, FIRF suspended further employer contributions and advised its over-funded employers, including Sooner Federal Savings & Loan Association, that the FECO would be used to offset the employers' future funding obligations to the plan.

In 1989, Sooner became insolvent. The Resolution Trust Corporation, Sooner's receiver, sold some of its assets to a successor savings association, excepting any interest in, or claims against, FIRF. Because of its liquidation, Sooner was deemed to have withdrawn from FIRF.

At the time of its insolvency, the value of Sooner's FECO credit was approximately $4.1 million. RTC brought this action against FIRF to obtain payment of the

FECO credits, asserting a common law claim for unjust enrichment. In response, FIRF claimed it was prohibited by ERISA from distributing the FECO credits to RTC or any employer for non-pension related purposes. Both parties filed motions for summary judgment. The district court granted RTC's motion and denied that of FIRF. Judgment in the amount of $4.6 million was entered in favor of RTC, and this appeal ensued.

■ On appeal, FIRF contends ERISA's "exclusive benefit" rule prohibits the use of FECO balances for non-pension purposes.[1] We agree.

Citing *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) (denying the inclusion of pension benefits in a bankrupt estate), and *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990) (reversing the imposition of a constructive trust on an convicted union official's pension benefits), FIRF argues the exclusive benefit rule reflects a congressional policy choice to protect a stream of income for pensioners and their dependents.[2] Because RTC will remove the FECO credits from the pension fund and place them in the U.S. Treasury, FIRF asserts the exclusive benefit rule is violated.

The district court held *Guidry* and *Patterson* were distinguishable because they involved the anti-alienation rule, not the exclusive benefit rule. The anti-alienation rule states: "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." ERISA § 206(d)(1), 29 U.S.C. 1056(d)(1). FIRF argues this distinction is irrelevant, contending both the anti-alienation rule and the exclusive benefit rule are designed to effectuate the congressional policy of assuring pension assets are used only for the benefit of employees and their families.

In response, RTC cites several cases in which courts have held that federal common law allows equitable actions in ERISA cases. RTC also asserts these equitable actions are not limited to merely enforcing a right expressly provided in ERISA. Instead, RTC claims unjust enrichment remedies may be fashioned where there is a "particularly strong indication that the unjust enrichment doctrine will vindicate an important statutory policy." *Van Orman v. American Ins. Co.*, 680 F.2d 301, 312 (3d Cir.1982). RTC avers because the FECO credits will go into the U.S. Treasury and thus help reduce the loss to taxpayers, the creation of federal common law in this case implements RTC's mandate under FIRREA and thus vindicates an important statutory policy.

RTC also argues the equitable principles of restitution and unjust enrichment developed under federal common law favor RTC's recovery of the FECO credits. Citing *Chait v. Bernstein*, 835 F.2d 1017 (3d Cir.1987), RTC declares equity favors reversion to employers of any surplus funds not needed to satisfy employee benefits. Thus, RTC continues, FIRF's retention of the FECO credits is inequitable and contrary to ERISA policy.

Citing several cases in which courts held recovery by a receiver of an insolvent em-

1. The "exclusive benefit" rule states:
   Except as provided in paragraph (2), (3), or (4) or subsection (d) of this section, or under sections 1342 and 1344 of this title (relating to termination of insured plans), or under section 420 of Title 26 as in effect on January 1, 1995, the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.
   ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1).

2. Discussing the underpinning of ERISA, the Supreme Court has stated:
   One of Congress' central purposes in enacting this complex legislation was to prevent the "great personal tragedy" suffered by employees whose vested benefits are not paid when pension plans are terminated. Congress found "that owing to the inadequacy of current minimum standards, the soundness and stability of plans with respect to adequate funds to pay promised benefits may be endangered; that owing to the termination of plans before requisite funds have been accumulated, employees and their beneficiaries have been deprived of anticipated benefits.
   *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 374–75, 100 S.Ct. 1723, 1732–33, 64 L.Ed.2d 354 (1980) (quoting ERISA § 2(a), 29 U.S.C. § 1001(a)).

ployer distinguishable from recovery by an employer, RTC urges the exclusive benefit rule does not bar its recovery here. Basic to this position is the assumption the exclusive benefit rule is inapplicable to receivers of defunct employers.

Thus postured, the issues are clearly drawn. We must decide which of two significant public policies is to govern this dispute. Is the ERISA objective of protecting plan participants and their beneficiaries more important than RTC's objective of recovering "assets" of a failed thrift for the benefit of the public at large?

Our review leads us to believe the primary concern here must be for the preservation of the fund assets in consonance with the basic tenet of ERISA. While we do not denigrate the importance of RTC's responsibility for marshalling assets of failed financial institutions for the benefit of the federal fisk, we think Congress has called for special concern for the beneficiaries of employee funds that mandates giving this fund precedence here. In short, then, we believe the district court erred in creating a federal common law remedy of unjust enrichment and restitution in this case. Furthermore, we believe the district court's holding is contrary to the Supreme Court's enforcement of the ERISA's policy of ensuring the security of employees' pension benefits.

■ We begin our analysis first by consideration of whether ERISA's provisions may be affected by common law. Unlike an action under the statute itself, the weight of authority supports the application of federal common law to ERISA disputes. *See, e.g., Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 25 n. 26, 103 S.Ct. 2841, 2854, 77 L.Ed.2d 420 (1983); *Rodrigue v. Western & Southern Life Ins. Co.,* 948 F.2d 969, 971 (5th Cir. 1991); *Kwatcher v. Massachusetts Serv. Employees Pension Fund,* 879 F.2d 957, 966 (1st Cir.1989); *Whitworth Bros. Storage Co. v. Central States Southeast and Southwest Areas Pension Fund,* 794 F.2d 221, 234 (6th Cir.1986). However, the "power [of the fed-

eral courts] to develop common law pursuant to ERISA does not give carte blanche power to rewrite the legislation to satisfy [the courts'] proclivities." *Jamail, Inc. v. Carpenters Dist. Council of Houston Pension & Welfare Trusts,* 954 F.2d 299, 303–04 (5th Cir.1992). Instead, the courts must continue to implement the policies of ERISA. *Outzen v. Federal Deposit Ins. Corp. ex rel. State Examiner of Banks of Wyoming,* 948 F.2d 1184, 1188 (10th Cir.1991).

The district court relied upon several cases in which courts have fashioned federal common law to allow employers to recapture contributions to a pension plan. *See, e.g., Kwatcher, Whitworth,* and *Award Service, Inc. v. Northern California Retail Clerks Unions and Food Employers Joint Pension Trust Fund,* 763 F.2d 1066 (9th Cir.1985). However, most of those cases involved mistaken contributions where recapture is specifically permitted under ERISA § 403(c)(2). This case, however is patently distinguishable because it involves an actuarial surplus, not mistaken contributions in finite sums. The difference between money actually paid in error and an actuarial credit potentially recoverable at some future date is patent. Even more significantly, however, RTC simply does not fit into any of the exceptions under § 403(c)(2) of ERISA.[3]

The district court also held its use of federal common law is consistent with *Outzen* and *Chait.* However, both of those cases involved single employer plans. This court and the Third Circuit invoked federal common law to permit the employers to recover surplus from a terminated plan after all benefits were provided to the pensioners and their beneficiaries. Under those circumstances, the plan beneficiaries made full recovery of all their benefits, and no purpose remained for holding the funds inviolate. Again, ERISA specifically provides for such a remedy. *See* ERISA § 4044(d)(1), 29 U.S.C. § 1344(d)(1).

■ Unlike the plans in *Outzen* and *Chait,* FIRF is a multiple-employer plan that con-

---

**3.** That provision allows employers to seek return of contributions under three specific conditions

not present here.

tinues to carry on business. ERISA provides several ways for an employer to withdraw surplus from a multiple-employer plan. In particular, a successor-employer can obtain the FECO credits of a defunct employer by setting up a "qualified successor plan," (QSP) and withdrawing from the pension plan. Under a QSP, the successor employer assumes sole sponsorship of a single-employer plan and assumes sole liability for the payment of all obligations owed to the old employer's employees. However, RTC did not choose this option.

The district court also held RTC's recovery of FECO balances would not endanger the employees in the plan because FIRF will be over-funded even after RTC removes Sooner's FECO balance. However, the court's decision appears to have been based upon its misconceptions regarding the nature of the FECO credits.

■ The district court seems to have presumed the FECO was a discrete and identifiable sum of money. We do not believe that presumption is justified. In the context of an ongoing multiple-employer plan, the FECO surplus is "not a pile of assets stacked in the corner. It is instead an accounting construct." *Johnson v. Georgia–Pacific Corp.*, 19 F.3d 1184, 1189 (7th Cir.1994). In fact, the parties do not seriously contest that the FECO was an actuarially determined surplus. Thus the FECO exist merely as book entries applicable to employer's future contributions and, as such, are not subject to withdrawal by any participating employer. *Financial Inst. Retirement Fund v. Office of Thrift Supervision*, 766 F.Supp. 1302, 1308 (S.D.N.Y.1991), *aff'd*, 964 F.2d 142 (2d Cir. 1992). Indeed, RTC admits Sooner would not have been entitled to the funds.

Moreover, it is also evident that the exact amount of the FECO constantly varies in concert with the values of the investments comprising the corpus of the fund. Yet, the district court found the FECO are neither hypothetical nor theoretical because FIRF itself has stated FECO assets are calculated by computing each employer's share of the overall fund assets. For this reason, RTC contends the FECO are tangible assets of the fund. RTC further argues FIRF is a defined benefit plan and the benefits payable to its employee members and their beneficiaries are "determinable at any given point in time based on a specific formula." According to RTC, the plan formula indicates the FECO balances are not needed to satisfy the defined benefits.

RTC's argument misses the mark. The question of whether the FECO credits are needed for the payment of benefits can only be determined once the plan as a whole has been terminated. Until then, FIRF must anticipate that there could be dramatic changes on either side of the balance sheet. In simple terms, today's surplus could be tomorrow's deficit. The possibility of a shortfall will remain as long as FIRF continues to exist.

■ A cardinal principle of ERISA is that the assets of a pension plan shall be held for the exclusive purpose of providing benefits to participants and their beneficiaries. This court has held the exclusive benefit rule is "violated if there has been a removal of plan assets for the benefit of the plan sponsor or anyone other than the plan participants." *Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1506 (10th Cir.1995) (quoting *Aldridge v. Lily–Tulip, Inc. Salary Retirement Plan Benefits Comm.*, 953 F.2d 587, 592 n. 6 (11th Cir.1992)), *cert. denied*, — U.S. —, 116 S.Ct. 565, 133 L.Ed.2d 490 (1995).

Here, whether RTC or FIRF is awarded the FECO credits, the employees themselves do not benefit directly. Thus, the "letter" of the exclusive benefit rule is violated in either event. Indeed, RTC strongly argues awarding the FECO to FIRF benefits the employers and not the employees. However, awarding the FECO credits to FIRF ultimately implements the policy behind the exclusive benefit rule by protecting the stability of the plan.

Disallowing cash withdrawal of the FECO by employers will prevent diminution of the corpus of the fund in the event of an economic reversal sufficient to reduce the present asset value of that corpus. Remembering any value employers may now perceive from not having to make further cash contribu-

tions to the fund is grounded upon an actuarial calculation and is not represented by hard cash on deposit, it becomes clear the value of any employers' FECO is ephemeral. That value can and will diminish with diminution of the value of the fund corpus. Thus, allowing employers to withdraw their FECO in a sum based on today's market conditions fails to take into account the consequences of future economic downturns.

If a significant devaluation of the fund's assets diminishes its value, today's FECO will turn into tomorrow's demand for contributions. Allowing employers to withdraw their FECO portends exacerbation of the diminution because more money will be needed to bring the fund to the condition of full funding that exists today. Thus, withdrawal of the FECO represents a risk not tolerable under the exclusive benefit rule.

Furthermore, because of the nature of the FECO and the imponderability of future economics, we are unable to accept RTC's argument that FIRF's retention of the FECO credits would create an inequitable result. Moreover, redistribution of the credits among FIRF's remaining contributing employers is part of the nature of a multiple-employer plan. *See, e.g., Ganton Technologies, Inc. v. National Indus. Group Pension Plan,* 865 F.Supp. 201, 207 (S.D.N.Y.1994). Just as any shortfall due to a terminated employer is the responsibility of the remaining employers, so too should any surplus be distributed to the remaining participating employers. In fact, as FIRF points out, Sooner's FECO includes its pro rata share of FECO from employers who left the plan before Sooner.

We cannot help but conclude RTC's removal of the FECO credits could potentially destabilize FIRF. Furthermore, the district court's decision leads to the prospect of further diminution of the corpus of the plan because other employers may be encouraged to leave the plan and remove their FECO credits. We are mindful that in fashioning federal common law remedies under ERISA, we have instructed "the ultimate consideration [is] whether allowance or disallowance of particular relief would best effectuate the underlying purposes of ERISA—enforcement of strict fiduciary standards of care in the administration of all aspects of pension plans and promotion of the best interests of participants and beneficiaries." *Outzen,* 948 F.2d at 1188 (quoting *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). Because awarding the FECO credits to RTC violates ERISA policy, the district court erred in creating new rights for RTC under federal common law. The judgment of the district court is **REVERSED.**