GUIDRY *v.* SHEET METAL WORKERS NATIONAL
PENSION FUND ET AL.

No. 88–1105.   Argued November 29, 1989—Decided January 17, 1990

BLACKMUN, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BRENNAN, WHITE, STEVENS, O'CONNOR, SCALIA, and KENNEDY, JJ., joined, and in all but Part II–C of which MARSHALL, J., joined.

*Eldon E. Silverman* argued the cause for petitioner. With him on the briefs were *Scott Gelman* and *Kenneth T. Eichel.*

*Joseph M. Goldhammer* argued the cause for respondents. With him on the brief were *Walter C. Brauer III* and *Ellen M. Kelman.**

---

*\*Solicitor General Starr, Deputy Solicitor General Shapiro, Christopher J. Wright, Allen H. Feldman, Mary-Helen Mautner,* and *Ellen L. Beard* filed a brief for the United States as *amicus curiae* urging reversal.

JUSTICE BLACKMUN delivered the opinion of the Court.†

Petitioner Curtis Guidry pleaded guilty to embezzling funds from his union. The union obtained a judgment against him for $275,000. The District Court imposed a constructive trust on Guidry's pension benefits, and the United States Court of Appeals for the Tenth Circuit affirmed that judgment. Petitioner contends that the constructive trust violates the statutory prohibition on assignment or alienation of pension benefits imposed by the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U. S. C. § 1001 *et seq.* (1982 ed.).[1]

## I

From 1964 to 1981, petitioner Guidry was the chief executive officer of respondent Sheet Metal Workers International Association, Local 9 (Union). From 1977 to 1981 he was also a trustee of respondent Sheet Metal Workers Local No. 9 Pension Fund. Petitioner's employment made him eligible to receive benefits from three union pension funds.[2]

In 1981, the Department of Labor reviewed the Union's internal accounting procedures. That review demonstrated that Guidry had embezzled substantial sums of money from the Union. See App. 20. This led to petitioner's resignation. A subsequent audit indicated that over $998,000 was missing. *Id.*, at 26. In 1982, petitioner pleaded guilty to embezzling more than $377,000 from the Union, in violation of § 501(c) of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 73 Stat. 536, 29 U. S. C. § 501

---

†JUSTICE MARSHALL joins all but Part II–C of this opinion.

[1] Section 206(d)(1), 29 U. S. C. § 1056(d)(1) (1982 ed.), of ERISA states: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."

[2] In addition to the Local No. 9 Pension Fund, petitioner was eligible to receive benefits from respondent Sheet Metal Workers National Pension Fund and from respondent Sheet Metal Workers Local Unions and Councils Pension Fund.

(c) (1982 ed.).[3]  Petitioner began serving a prison sentence. In April 1984, while still incarcerated, petitioner filed a complaint against two of the plans in the United States District Court for the District of Colorado, alleging that the plans had wrongfully refused to pay him the benefits to which he was entitled.[4]  The Union intervened, joined the third pension plan as a party, and asserted six claims against petitioner.[5] On the first five claims, petitioner and the Union stipulated to the entry of a $275,000 judgment in the Union's favor. App. 52–58.  Petitioner and the Union agreed to litigate the availability of the constructive trust remedy requested in the sixth claim.  *Id.*, at 58.

Petitioner previously had negotiated a settlement with the Local No. 9 Pension Fund.  *Id.*, at 44–46.[6]  The other two

---

[3] Section 501(c) provides: "Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both."

[4] The complaint alleged that petitioner was eligible to receive benefits of $577 per month from the Sheet Metal Workers Local Unions and Councils Pension Fund, and $647.51 per month from the Sheet Metal Workers National Pension Fund.  App. 5.

[5] The first claim alleged that Guidry had breached his fiduciary duty to the Union in violation of § 501(a) of the LMRDA, 29 U. S. C. § 501(a) (1982 ed.). App. 32–33.  The second through fifth claims asserted state common-law claims under theories of conversion, fraud, equitable restitution, and negligence.  *Id.*, at 33–35.  The sixth claim, asserted against petitioner and the three pension funds, did not set forth a substantive ground for relief.  Rather, it asserted that the District Court "must restrain and enjoin the Pension Funds from paying any further pension benefits to Plaintiff Guidry until the completion of this action and thereafter until [the Union] is made whole for its losses."  *Id.*, at 35.

[6] The parties stipulated that the Local No. 9 Pension Fund was holding $23,865 in accrued benefits for petitioner.  *Id.*, at 45.  Under the settlement, the fund agreed to pay petitioner $3,865 in accrued benefits (the remaining $20,000 to go to the fund's insurer) and to resume monthly payments to petitioner as of June 1985.  *Id.*, at 46.

plans, however, contended that petitioner had forfeited his right to receive benefits as a result of his criminal misconduct. *Id.*, at 47–50. In the alternative those plans contended that, if petitioner were found to have a right to benefits, those benefits should be paid to the Union rather than to Guidry. *Ibid.*

The District Court therefore was confronted with three different views regarding the disbursement of petitioner's pension benefits. Petitioner contended that the benefits should be paid to him. The two funds argued that the benefits had been forfeited. The Union asserted that the benefits had not been forfeited, but that a constructive trust should be imposed so that the benefits would be paid to the Union rather than to petitioner.

The District Court first rejected the funds' claim that petitioner had forfeited his right to benefits. 641 F. Supp. 360, 362 (Colo. 1986). The court relied on § 203(a) of ERISA, 29 U. S. C. § 1053(a) (1982 ed.), which declares that "[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable" if the employee meets the statutory age and years of service requirements. 641 F. Supp., at 361–362. The court noted other District Court and Court of Appeals decisions holding that pension benefits were not forfeitable even upon a showing of the covered employee's misconduct. *Id.*, at 362.[7]

The court concluded, however, that the prohibition on assignment or alienation of pension benefits contained in ERISA's § 206(d)(1), 29 U. S. C. § 1056(d)(1) (1982 ed.), did not preclude the imposition of a constructive trust in favor of the Union. The court appeared to recognize that the anti-alienation provision generally prohibits the garnishment of pension benefits as a means of collecting a judgment. The

---

[7] The District Court cited *Fremont* v. *McGraw-Edison Co.*, 606 F. 2d 752 (CA7 1979), cert. denied, 445 U. S. 951 (1980); *Winer* v. *Edison Brothers Stores Pension Plan*, 593 F. 2d 307 (CA8 1979); and *Vink* v. *SHV North America Holding Corp.*, 549 F. Supp. 268 (SDNY 1982).

court, nevertheless, stated: "ERISA must be read in pari materia with other important federal labor legislation." 641 F. Supp., at 362. In the Labor Management Relations Act, 1947, 61 Stat. 136, as amended, 29 U. S. C. § 141 *et seq.* (1982 ed.), and in the LMRDA, Congress sought to combat corruption on the part of union officials and to protect the interests of the membership. Viewing these statutes together with ERISA, the District Court concluded: "In circumstances where the viability of a union and the members' pension plans was damaged by the knavery of a union official, a narrow exception to ERISA's anti-alienation provision is appropriate." 641 F. Supp., at 363. The court therefore ordered that benefits payable to petitioner from all three funds should be held in constructive trust until the Union's judgment and interest thereon were satisfied. *Ibid.*

The United States Court of Appeals for the Tenth Circuit affirmed. 856 F. 2d 1457 (1988). The court concluded that ERISA's anti-alienation provision could not be invoked to protect a dishonest pension plan fiduciary whose breach of duty injured the beneficiaries of the plan. The court deemed it "extremely unlikely that Congress intended to ignore equitable principles by protecting individuals such as [petitioner] from the consequences of their misconduct." *Id.*, at 1460. The court concluded that "the district court's imposition of a constructive trust on [petitioner's] pension benefits both accorded with . . . principles of trust law and was well within its discretionary power as defined by the common law and ERISA." *Id.*, at 1461.[8]

---

[8] In the alternative, petitioner contended that, even if ERISA did not bar the imposition of a constructive trust, 75% of his pension benefits should be exempt from garnishment pursuant to § 303 of the Consumer Credit Protection Act, 82 Stat. 163, as amended, 15 U. S. C. § 1673(a). The Court of Appeals rejected that argument on the ground that petitioner had failed to comply with the procedural requirements of the Colorado garnishment laws. 856 F. 2d, at 1463–1464.

Because Courts of Appeals have expressed divergent views concerning the availability of exceptions to ERISA's anti-alienation provision,[9] we granted certiorari, 492 U. S. 904 (1989).

## II

Both the District Court and the Court of Appeals presumed that § 206(d)(1) of ERISA erects a general bar to the garnishment of pension benefits from plans covered by the Act. This Court, also, indicated as much, although in dictum, in *Mackey* v. *Lanier Collection Agency & Service, Inc.*, 486 U. S. 825 (1988). In *Mackey* the Court held that ERISA does *not* bar the garnishment of welfare (*e. g.*, vacation) benefits. In reaching that conclusion, it noted that § 206 (d)(1) proscribes the assignment or alienation of *pension* plan benefits, but that no comparable provision applies to ERISA *welfare* benefit plans. *Id.*, at 836. It reasoned that "when Congress was adopting ERISA, it had before it a provision to bar the alienation or garnishment of ERISA plan benefits, and chose to impose that limitation only with respect to ERISA pension benefit plans, and *not* ERISA welfare benefit plans." *Id.*, at 837 (emphasis in original). The view that the statutory restrictions on assignment or alienation of pension benefits apply to garnishment is consistent with appli-

---

[9] Compare *Ellis National Bank of Jacksonville* v. *Irving Trust Co.*, 786 F. 2d 466 (CA2 1986) (no exception to § 206(d)(1) to obtain relief for employee's criminal misconduct); *United Metal Products Corp.* v. *National Bank of Detroit*, 811 F. 2d 297 (CA6 1987) (same), cert. dism'd, 485 U. S. 1017 (1988), with *St. Paul Fire & Marine Ins. Co.* v. *Cox*, 752 F. 2d 550, 552 (CA11 1985) ("[G]arnishment undertaken to satisfy liabilities arising from criminal misconduct toward an employer constitutes an exception to the non-alienability provisions of ERISA"). See also *Crawford* v. *La Boucherie Bernard Ltd.*, 259 U. S. App. D. C. 279, 815 F. 2d 117 (recognizing exception to anti-alienation provision when trustee defrauds the pension plan), cert. denied *sub nom. Goldstein* v. *Crawford*, 484 U. S. 943 (1987).

cable administrative regulations,[10] with the relevant legislative history,[11] and with the views of other federal courts.[12] It is also consonant with other statutory provisions designed to safeguard retirement income.[13]    We see no meaningful distinction between a writ of garnishment and the constructive trust remedy imposed in this case.    That remedy is therefore prohibited by § 206(d)(1) unless some exception to the general statutory ban is applicable.

## A

The Court of Appeals, in holding that "the district court's use of a constructive trust to redress breaches of ERISA was proper," 856 F. 2d, at 1460, indicated that an exception to the anti-alienation provision can be made when a pension plan fiduciary breaches a duty owed to the plan itself.    The court

---

[10] Treasury Department regulations state that for tax purposes "a trust will not be qualified unless the plan of which the trust is a part provides that benefits provided under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process."    26 CFR § 1.401(a)–13(b)(1) (1989).

[11] The anti-alienation provision permits "any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment."    ERISA § 206(d)(2), 29 U. S. C. § 1056(d)(2) (1982 ed.).    The Conference Report states: "For purposes of this rule, a garnishment or levy is not to be considered a voluntary assignment."    H. R. Conf. Rep. No. 93–1280, p. 280 (1974).

[12] See, e. g., United Metal Products, supra; Ellis National Bank, supra; Tenneco Inc. v. First Virginia Bank of Tidewater, 698 F. 2d 688, 689–690 (CA4 1983).    Even courts that have recognized equitable exceptions to the bar on alienation have assumed that § 206(d)(1) operates, as a general matter, to proscribe garnishment of pension benefits.    See St. Paul Fire & Marine, 752 F. 2d, at 551–552; Crawford, 259 U. S. App. D. C., at 283–284, 815 F. 2d, at 121–122.

[13] The garnishment of retirement benefits is prohibited by the Social Security Act, 49 Stat. 620, as amended, 42 U. S. C. § 407 (1982 ed.); the Railroad Retirement Act, as amended, 47 Stat. 438, 45 U. S. C. § 231m(a) (1982 ed., Supp. V); the Civil Service Retirement Act, 5 U. S. C. § 8346(a); and the Veterans' Benefits Act, 38 U. S. C. § 3101(a) (1982 ed.).

relied on § 409(a) of ERISA, 29 U. S. C. § 1109(a) (1982 ed.), which provides that a faithless pension plan fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate." 856 F. 2d, at 1459. We need not decide whether the remedial provisions contained in § 409(a) supersede the bar on alienation in § 206(d)(1), since petitioner has not been found to have breached any fiduciary duty *to the pension plans.* Respondents contend that, due to the nature of petitioner's scheme, there exists continuing uncertainty as to how much money was stolen from the Union and how much was taken from the pension funds.[14] It is clear, however, that petitioner was convicted of stealing money only from the Union. See n. 3, *supra.* Moreover, petitioner has negotiated a settlement with the fund of which he was a fiduciary, and only the Union has a judgment against him. Respondents' argument plays on the natural tendency to blur the distinctions between a fund and its related union (since an injury to either will hurt the union's membership). Respondents, however, cannot avoid the fact that the funds here and the Union are distinct legal entities. (Indeed, at an earlier stage of the litigation these parties took inconsistent positions: the funds argued that petitioner's benefits were subject to forfeiture, while the Union contended that petitioner retained his right to benefits but that the benefits should be placed in constructive trust). Although petitioner's actions may have harmed the Union's members who are the beneficiaries of

_____

[14] One of the ways in which petitioner embezzled was by stealing checks issued by the funds to the Union as payment for clerical services. At oral argument before the District Court, the Union's attorney stated: "Nobody really decided yet whether some of this money was stolen from the union or the pension funds." 3 Record 19, App. to Pet. for Cert. C-13. Counsel also stated, however, that "the trust funds through bonds and other sources of compensation don't have claims against Mr. Guidry anymore, and we do, the union does . . . . The way things shake out, we are holding the bag. We are the ones who lost the money . . . ." *Ibid.*

the funds, petitioner has not been found to have breached any duty to the plans themselves. In our view, therefore, the Court of Appeals erred in invoking § 409(a)'s remedial provisions.

B

Recognizing the problem with the Court of Appeals' approach, respondents, like the District Court, rely principally on the remedial provisions of the LMRDA. Section 501(a), 29 U. S. C. § 501(a) (1982 ed.), of that Act states that a union's officers "occupy positions of trust in relation to such organization and its members as a group" and therefore have a duty "to hold its money and property solely for the benefit of the organization and.its members." Section 501(b), 29 U. S. C. § 501(b) (1982 ed.), provides, under certain conditions, a private right of action "to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization."[15] We assume, without deciding, that the statutory provision for "other appropriate relief" may authorize, in some circumstances, the imposition of a constructive trust.[16] The question is whether that authorization may

---

[15] Section 501(c), 29 U. S. C. § 501(c) (1982 ed.), under which petitioner was convicted, establishes criminal penalties for embezzlement or theft by a union officer or employee.

[16] Section 501(b), 29 U. S. C. § 501(b) (1982 ed.), by its terms, does not establish a private right of action for a union itself. Rather, it provides that a suit may be brought in district court by a union *member* when a union officer is alleged to have breached his duties "and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization." That language certainly contemplates that a union may bring suit against its officers in some forum, but it does not expressly provide an independent basis for federal jurisdiction. Courts have reached inconsistent positions on the question whether a union may bring suit under § 501. Compare *Building Material and Dump Truck Drivers, Local 420* v. *Traweek*, 867 F. 2d 500, 506–507 (CA9 1989) (no right of action), with *Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees* v. *Orr*, 95 LRRM 2701, 2702 (ED

override ERISA's prohibition on the alienation of pension benefits.

Respondents point to § 514(d) of ERISA, 29 U. S. C. § 1144(d) (1982 ed.). It states: "Nothing in this title shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law." In respondents' view, application of ERISA's anti-alienation provision to preclude a remedy that would otherwise be available would "modify, impair or supersede" the LMRDA. We do not believe, however, that the LMRDA will be modified, impaired, or superseded by our refusal to allow ERISA pension plans to be used to effectuate the remedial goals of the LMRDA. Were we to accept respondents' position, ERISA's anti-alienation provision would be inapplicable whenever a judgment creditor relied on the remedial provisions of a federal statute. Such an approach would eviscerate the protections of § 206(d), and we decline to adopt so broad a reading of § 514(d).[17]

It is an elementary tenet of statutory construction that "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one . . . ." *Morton* v. *Mancari*, 417 U. S. 535, 550–551 (1974). We do

Tenn. 1977) (union has right of action to allege a violation of § 501). We need not resolve that question here. Rather, we assume, without deciding, that a union may invoke the remedial provisions of § 501(b).

Uncertainty as to the scope of § 501(b) does not call into question the subject-matter jurisdiction of this Court or of the District Court and the Court of Appeals. This suit properly was brought by petitioner under § 502 of ERISA to recover benefits allegedly due him under the pension plans. 29 U. S. C. §§ 1132(a)(1)(B) and 1132(e) (1982 ed.).

[17] Indeed, the LMRDA has its own saving clause. Section 603(a), 29 U. S. C. § 523(a) (1982 ed.), provides that "except as explicitly provided to the contrary, nothing in this Act shall take away any right or bar any remedy to which members of a labor organization are entitled under [any] other Federal law or law of any State." This provision weighs against respondents' contention that the LMRDA's authorization of "other appropriate relief" supersedes ERISA's express proscription of any alienation or assignment of pension benefits.

not believe that congressional intent would be effectuated by reading the LMRDA's general reference to "other appropriate relief" as overriding an express, specific congressional directive that pension benefits not be subject to assignment or alienation. In our view, the two statutes are more persuasively reconciled by holding that the LMRDA determines what sort of *judgment* the aggrieved party may obtain, while ERISA governs the narrow question whether that judgment may be collected through a particular means—a constructive trust placed *on the pension*.

## C

Nor do we think it appropriate to approve any generalized equitable exception—either for employee malfeasance or for criminal misconduct—to ERISA's prohibition on the assignment or alienation of pension benefits. Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task.[18]

As a general matter, courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text. The creation of such exceptions, in our view, would be especially problematic in the context of an antigarnishment provision. Such a provision acts, by definition, to hinder the collection of a lawful debt. A restriction on garnishment therefore can be defended *only* on the view that the effectuation of certain broad social policies sometimes takes precedence over the desire to do equity between particular parties. It makes little sense

---

[18] See, for example, § 104(a) of the Retirement Equity Act of 1984, 98 Stat. 1433, 29 U. S. C. § 1056(d)(3) (1982 ed., Supp. V), where Congress mandated that the anti-alienation provision should not apply to a "qualified domestic relations order."

to adopt such a policy and then to refuse enforcement whenever enforcement appears inequitable. A court attempting to carve out an exception that would not swallow the rule would be forced to determine whether application of the rule in particular circumstances would be "especially" inequitable. The impracticability of defining such a standard reinforces our conclusion that the identification of any exception should be left to Congress.

Understandably, there may be a natural distaste for the result we reach here. The statute, however, is clear. In addition, as has been noted above, the malefactor often is not the only beneficiary of the pension.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.[19]

*It is so ordered.*

---

[19] In light of our disposition of petitioner's ERISA claim, we need not address his alternative claim under the Consumer Credit Protection Act.