**Verna POMERANKE, et al., Ann Regan, et al., Gwendolyn Taylor, as Special Administrator of the Estate of Eleanor Lloyd, Deceased, Estate of Elsa A. Rosenau, Wilma Rettke, Personal Representative, Respondents,**

**v.**

**Lowell D. WILLIAMSON, Appellant,**

**Peoples State Bank of Truman, et al., Erickson, Zierke, Kuderer, Mattson & Wollschlager, P.A., Respondents.**

**No. C5–91–1088.**

Court of Appeals of Minnesota.

Dec. 24, 1991.

Robert M. Halvorson, Gislason, Dosland, Hunter & Malecki, New Ulm, for appellant.

A. Keith Hanzel, St. Paul, Richard D. Berens, John A. Edman, Fairmont, David W. Beehler, Kevin D. Conneely, Robins, Kaplan, Miller & Ciresi, Minneapolis, Daniel R. Butler, Butler & Associates, P.A., St. Paul, M. John Gustavson, Kenneth R. White, Farrish, Johnson & Maschka, Mankato, Elton A. Kuderer, Fairmont, for respondents.

Considered and decided by PETERSON, P.J., and FORSBERG, and KALITOWSKI, JJ.

## OPINION

FORSBERG, Judge.

Appellant Lowell Williamson pled guilty to felony theft in violation of Minn.Stat. § 609.52 (1990), for embezzlement of trust funds while an employee of Peoples State Bank of Truman, Inc. ("Bank"). Williamson was sentenced to 41 months in prison and ordered to pay restitution in excess of $250,000.

Williamson also was sued by the estates whose funds he embezzled. While in prison, he requested distribution of $14,000 from his Bank pension and profit-sharing plan, claiming such funds were exempt from the restitution order. The defrauded parties sued to keep the Bank from making a distribution. The district court granted their motion, and ordered Williamson's funds in the plan paid over to the court for distribution to the restitution creditors. We reverse, and order the funds distributed as requested by Williamson.

## FACTS

Williamson was a long-time employee and director of the Bank. His duties largely involved running an insurance agency owned by the Bank. He also used his position at the Bank to solicit business as personal representative for a number of probate estates. Commencing in approximately 1987, Williamson regularly misappropriated trust funds for personal investments in the soybean futures commodity market. He did so with no apparent success.

Once the heirs and beneficiaries of the various estates became aware of this breach of fiduciary duty, they commenced suit against Williamson. Soon thereafter, Williamson pled guilty to felony theft, received a sentence of 41 months in prison, and was ordered to pay restitution to the Elsa Rosenau estate in the amount of $280,000. In addition to the claim of the Rosenau estate, the claims of several other estates (co-plaintiffs in this suit) remain outstanding. Unfortunately, it appears from the record that Williamson was, at the time of sentencing, deeply in debt.

Williamson, pursuant to the restitution order, prepared a list of nonexempt assets for the court. The list did not include $56,000 in an ERISA qualified profit-sharing plan with his former employer, the Bank. While incarcerated, Williamson made a demand for release of $14,000 of his funds in the plan, ostensibly for the support of his wife and children. The Bank, as trustee of the pension plan, moved for an order requiring deposit of the plan proceeds with the court due to objections to the distribution raised by the restitution creditors.

Williamson brought a separate motion for an order directing the release of the $14,000 and, eventually, the remaining funds in his account. The district court denied Williamson's motion and ordered the Bank to deposit the funds with the court for distribution pursuant to the restitution order. On rehearing, the court again affirmed its position, ordering the funds deposited with the court. This appeal followed.

## ISSUE

Did the district court err in finding an ERISA qualified plan is not exempt from a state court restitution order?

## ANALYSIS

Williamson's benefits are in an ERISA qualified plan pursuant to 29 U.S.C.A. § 1051(1) (1985). As such, federal law preempts and supersedes "any and all State laws insofar as they may now or hereafter relate to any [qualified plan]." 29 U.S.C.A. § 1144(a) (1985). ERISA further provides "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C.A. § 1056(d)(1) (Supp.1991).

The United States Supreme Court has recently instructed courts to closely apply this ERISA prohibition against alienation.

> Nor do we think it appropriate to approve any generalized equitable exception—either for employee malfeasance or for criminal misconduct—to ERISA's prohibition on the assignment or alienation of pension benefits. Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task.

*Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 493 U.S. 365, 375–77, 110 S.Ct. 680, 687, 107 L.Ed.2d 782 (1990) (emphasis added) (footnote omitted). The Court further acknowledged that "there may be a natural distaste for the result we reach here." *Id.* at 377, 110 S.Ct. at 688. *Guidry* is clear authority requiring reversal in this case.

In reversing, we have fully considered respondents' contention that we should follow *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). In *Kelly,* the United States Supreme Court reversed a bankruptcy court's discharge of a state court order for restitution on federalism grounds.

> The right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States. This Court has emphasized repeatedly "the fundamental policy against federal interference with state criminal prosecutions."

*Id.* at 47, 107 S.Ct. at 360 (quoting *Younger v. Harris,* 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971)). The Court further noted its reluctance to interpret an act of Congress as in any way infringing on traditional states' rights to fashion criminal sanctions.

> [T]his interpretation of the [bankruptcy] Code would do more than force state prosecutors to defend state criminal judgments in federal bankruptcy court. In some cases, it could lead to federal remission of judgments imposed by state criminal judges.
>
> This prospect, in turn, would hamper the flexibility of state criminal judges in choosing the combination of imprisonment, fines, and restitution most likely to further the rehabilitative and deterrent goals of state criminal justice systems. We do not think Congress lightly would limit the rehabilitative and deterrent options available to state criminal judges.

*Id.* 479 U.S. at 49, 107 S.Ct. at 360–61 (footnote omitted).

*Kelly,* however, is distinguishable from this case. There, the restitution order was a condition of probation. Here, Williamson

is currently incarcerated. Failure to pay the restitution thus would have no effect on the criminal sanction in this case. In a related distinction, Minnesota restitution orders are docketed and enforced as civil judgments. Minn.Stat. § 611A.04, subd. 3 (1990). Restitution orders in Connecticut, the original jurisdiction in *Kelly,* are docketed and enforced as a part of the criminal penalty. *Id.* at 40, 107 S.Ct. at 356.

More important, however, the federal action in *Kelly* discharged and rendered void a state criminal sanction. Here, there is no discharge of sanction, rather a narrow exemption for certain funds. The sanction remains in effect and is enforceable against other sources of Williamson's income. The exemption does only minimal violence to the federalism interests at issue in *Kelly.* In light of the unequivocal directive in *Guidry,* distribution of the funds to Williamson must be ordered.

### DECISION

The district court erred in concluding funds from Williamson's ERISA qualified plan are available for payment of court ordered restitution. The funds must be released for distribution in accordance with the terms of the plan and Williamson's directions.

Reversed.