**In re CARROZZELLA
& RICHARDSON,
Debtor.**

**Michael J. Daly, Trustee, Plaintiff,**

v.

**Gioacchino Parete, Defendant.**

**Bankruptcy No. 95–31231.
Adversary No. 96–3173.**

United States Bankruptcy Court,
D. Connecticut.

Dec. 4, 2001.

Douglas S. Skalka, Neubert, Pepe & Monteith, P.C., New Haven, Connecticut, for plaintiff-trustee.

Gerard I. Adelman, Weigand, Mahon & Adelman, Meriden, Connecticut, for defendant.

## *MODIFIED* FINDINGS OF FACT AND CONCLUSIONS OF LAW ON TRUSTEE'S COMPLAINT FOR AVOIDANCE OF TRANSFERS

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. INTRODUCTION

The captioned adversary proceeding presents another chapter in the sordid history of the financial dealings of Attorneys John A. Carrozzella (hereafter, "Carrozzella") and Thomas J. Richardson. These Findings of Fact and Conclusions of Law assume familiarity with a pattern of fraud perpetrated by Carrozzella upon scores of clients and other lay-persons who deposited funds with the Debtor firm, Carrozzella & Richardson (hereafter, "C & R"), over a period spanning two decades. *See e.g., Daly v. Biafore (In re Carrozzella & Richardson),* 237 B.R. 536 (Bankr.D.Conn. 1999).

This adversary proceeding is one of a group of actions prosecuted by the Plaintiff–Trustee in an attempt to recover so-called "False Profits" received by certain depositors who had the good fortune to withdraw all of the funds "held" for them by C & R prior to its financial collapse. Toward that end, the Trustee seeks to utilize the avoidance powers of Connecticut's version of the Uniform Fraudulent Transfer Act ("UFTA"), C.G.S. § 52–552a, *et seq.* As set forth in more detail hereafter, judgment must enter in favor of the Defendant since the Trustee has failed to adequately establish his entitlement to relief under C.G.S. § 52–552f.

### II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(H).

### III. FINDINGS OF FACT

The Court's findings of fact are derived from (i) the evidence adduced at trial, and (ii) the Court's independent examination and noticing of the official record of the instant case and adversary proceeding.

A. On July 19, 1995 (hereafter, the "Petition Date"), an involuntary petition was filed in this Court against C & R, seeking relief under Chapter 7 of the Bankruptcy Code. On August 21, 1995, an Order for Relief entered thereon, and thereafter Michael J. Daly was appointed as trustee of C & R's Chapter 7 bankruptcy estate.

B. The Defendant is one of many individuals (hereafter, "Depositor(s)") who from time to time placed personal funds with C & R in exchange for an agreed rate of return. Specifically, the Defendant deposited a total of $20,000.00 between 1981 and 1987 (hereafter, the "Deposit(s)"). In exchange for the Deposits C & R promised to (i) repay the principal thereof on demand, and (ii) pay interest on the balance thereof at an annual rate of 15%.

C. On multiple occasions after 1981, the Defendant received payments of interest, aggregating $16,542.11 (hereafter, the "Interest"); and in 1992, he withdrew the $20,000.00 in Deposit principal. The payment of the Interest and the withdrawal of principal are hereafter collectively referred to as the "Payment(s)".

D. Several of the Payments—totaling $22,283.32 (hereafter, the "Challenged Transfers")—were received by the Defendant within the four (4) years prior to the Petition Date, *i.e.* after July 19, 1991.

E. At the time of the Challenged Transfers, C & R was insolvent.

F. At a point in time not determined in this proceeding, C & R became involved, through the fraudulent activity of Attorney Carrozzella, in a criminal enterprise possessing many of the attributes of a "Ponzi" scheme—in which funds placed with a debtor by later depositors are secretly and illicitly utilized to pay returns, and repay principal, to earlier depositors.

G. At all times relevant to this adversary proceeding, C & R commingled the funds placed with it by a given Depositor with, *inter alia*, (i) funds deposited with C & R by other Depositors and other entities, and (ii) the general revenue of the legal practice of C & R.

## IV. CONCLUSIONS OF LAW

A. The Trustee's Complaint states that he brings his Claim for Relief under the authority of Bankruptcy Code Section 542(a). *See* Complaint, ¶¶ 2, 16; Adversary Proceeding Cover Sheet. However, his post-trial briefing alludes to Code Section 544 as the basis for his standing to pursue a state law-based fraudulent conveyance action against the Defendant.

B. On the Petition Date, Code Section 544(b) provided in relevant part as follows: "The trustee may avoid any transfer of an interest of the debtor in property ... that is *voidable under applicable law by a creditor* holding an unsecured claim that is allowable under section 502...." 11 U.S.C. § 544(b) (1995) (emphasis supplied).[1]

C. The Trustee's substantive Claim for Relief is made under the standards of C.G.S. § 52–552f(a), which provides, *inter alia*, that a transfer is "fraudulent" as to a creditor "if the debtor made the transfer ... *without receiving a reasonably equivalent value in exchange* for the transfer ... and the debtor was *insolvent* at that time...." (emphasis supplied).

■ D. Under Connecticut law the Trustee has the burden of proving the elements of C.G.S. § 52–552f by clear and convincing evidence. *See, e.g., Tessitore v. Tessitore*, 31 Conn.App. 40, 42–43, 623 A.2d 496 (1993).

E. The difference between the Payments and Deposits—*i.e.* the Interest—is alleged by the Trustee to constitute "False Profits" not supported by "reasonably equivalent value". And because the amount of the Challenged Transfers exceeds the amount of the Interest, the Challenged Transfers are claimed to be avoidable to the extent of the Interest. However, the Trustee's analysis erroneously assesses the entire 11–year financial history between C & R and the Defendant as a unitary transaction, *i.e.* as a single "exchange" for the purposes of C.G.S. § 52–552f.

■ F. The financial history highlighted in this adversary proceeding is in reality a series of separate exchanges. Therefore, in analyzing the voidability of the Challenged Transfers under C.G.S. § 52–552f the Court must focus on the discrete "exchange" which took place *at the time of* each of the several transactions between C & R and the Defendant, to wit:

1. The Defendant entered into a contract with C & R each time he made a

---

1. Given the nature of the disposition of this proceeding on the merits, it is unnecessary for the Court to consider in detail, and finally resolve, any question regarding the Trustee's standing under 544(b).

Deposit. Each of those contracts (hereafter, "Contract(s)") constituted an "exchange" within the meaning of C.G.S. § 52–552f. In each exchange, C & R received the Deposit, and the Defendant received the Debtor's *promise* to repay the Deposit on demand with interest (hereafter, the "Promise"). C & R's repayment Promise created a "debt" owing to the Defendant (hereafter, a "Debt"). For purposes of this adversary proceeding it is immaterial whether a given Deposit constituted "reasonably equivalent value" for its corresponding Promise since any cause of action under C.G.S. § 52–552f(a) with respect to a Contract exchange was extinguished long before the Petition Date. *See* C.G.S. § 52–552j; *cf.* 11 U.S.C. § 108.

2. Each Payment made by C & R to the Defendant—whether a return of principal or a payment of interest—constituted a separate "exchange" for purposes of C.G.S. § 52–552f(a). In each of those transactions, C & R made a Payment to the Defendant, and received in exchange a dollar-for-dollar satisfaction of the Debt. Satisfaction of an antecedent debt is explicitly acknowledged by C.G.S. § 52–552d(a) to be "value" for purposes of UFTA fraudulent transfer analysis. And since there has been no argument or proof that C & R transferred more than the agreed 15% interest, the dollar-for-dollar satisfaction provided "reasonably"—indeed, perfectly—equivalent value in exchange for the Payments, and in particular, for the Challenged Transfers.

 G. The Trustee also reasons that C & R did not receive reasonably equivalent value in exchange for the Challenged Transfers because those transfers were made in furtherance of a Ponzi scheme. The Trustee's view is premised upon his belief that as a matter of law the

contract that underlies a Ponzi scheme transaction is illegal, and therefore no value could have been given by the Defendant to C & R for the Challenged Transfers. This Court finds the Trustee's analysis unpersuasive for the following reasons:

1. This Court does not share the legal view that a transaction's illegality deprives that exchange of value. That view amounts to a *legal fiction*—it ignores the *legal fact* that the Debt satisfaction derived from the Challenged Transfers accorded real value to C & R. For purposes of the UFTA, "[v]alue is given ... if, in exchange for the transfer ..., property is transferred or *an antecedent debt is ... satisfied*". C.G.S. § 52–552d(a) (emphasis supplied). This language is plain and straight-forward; there is nothing in the text or legislative history of Section 52–552d(a) suggesting the existence of an "illegality" exception thereto. Nor would one be expected, since fraudulent conveyance remedies are designed to "right" the singular "wrong" of a *windfall* received at the expense of the debtor's estate, not to police the legality of transactions otherwise fair to the debtor. Other available remedies—both civil and criminal—are designed for that latter purpose.

2. Even if this Court subscribed to the view that illegal exchanges are devoid of value, the Defendant here would still prevail since the Challenged Transfers were made pursuant to Contracts he entered into as early as 1981, and no later than May of 1987—all before the onset of a period of time during which the Trustee has proven that C & R was engaged in fraudulent conduct consistent with a Ponzi scheme. Thus, even under the facts proven by the Trustee, the Contracts were legal and non-fraudulent. Further, the possibility that C & R's payment of the Debt—legally-incurred under the Contracts—may have

incidentally abetted an illegal solicitation of a third party by C & R does not transform the otherwise legal, non-fraudulent exchange into an illicit transaction.

■ H. The Court also finds unpersuasive any suggestion by the Trustee of the significance of the possibility that the Challenged Transfers were paid with funds which had been fraudulently solicited from other entities. In fact, the Trustee has not proven, or even argued, that the Challenged Transfers were composed of funds in which fraud victims held an interest, either by legal title or as trust beneficiaries. That being the case, the funds utilized in the Challenged Transfers were the property of C & R, regardless of the method of their acquisition.[2] More fundamentally however, proper analysis under C.G.S. § 52-552f must focus on the adequacy of what C & R received in exchange for the Challenged Transfers, not on the nature or provenance of the funds C & R used to make the Challenged Transfers.

■ I. The Trustee has argued in this proceeding that the Challenged Transfers were made with "actual intent to defraud" creditors. In rejecting this contention, the Court notes that the Trustee's Complaint was substantively pled only under Section 52-552f, which does not contain an "actual intent to defraud" standard. Even if it did, the claim would still fail since that statute creates an action only vis-a-vis creditors whose claims arose before the subject transfer was made (hereafter, "Contemporaneous Creditors"). If the evidence presented in this proceeding supported the suggestion that the Challenged Transfers were made with fraudulent intent, it did so only with respect to *future*, not Contemporaneous, creditors. The Trustee's Complaint does not cite to Section 52-552e(a)(1), which does contain an "actual intent" standard. Yet even if that Section had been properly raised, it is not at all clear that it would apply to an instance of actual intent to defraud future creditors.[3]

■ J. Equity does not compel a result at odds with that produced under a strict application of the UFTA.

■ 1. The lessons of *Cunningham v. Brown*, 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924), are inapposite here.

a. The Trustee argued, quoting *Cunningham*, that "when the fund with which the wrongdoer is dealing is wholly made up of the fruits of the frauds perpetrated against a myriad of victims ... the situation ... calls for application of the principle that equality is equity." *Id.* at 13, 44 S.Ct. 424. However, as noted and discussed at Finding of Fact "G" and fn. 2, *supra*, the fund from which the Challenged Transfers were paid was not "wholly made up of the fruits of frauds"; rather, it was composed in part of money derived from sources other than the Depositors, such as revenue generated by C & R's provision of legal services.

b. It is also important to note that *Cunningham's* "equality is equity" pronouncement was made in the context of

---

2. Even if title to some of the Challenged Transfer funds was held by entities other than C & R, the Trustee has not traced, or even attempted to trace, those funds through C & R's commingled account(s). The account(s) of C & R were not composed exclusively of "ill-gotten gains", as the Trustee's argument assumes. Rather, as supported by the testimony of the Trustee's own expert witness, the account(s) of C & R were composed of diverse revenue, including, without limitation, receipts from C & R's legal practice.

3. Whether a *common law* "actual intent to defraud" *future* creditors cause of action survived Connecticut's enactment of its version of the UFTA need not be decided here since it too was neither pled nor argued in this proceeding.

a preferential transfer case. Preferential transfer law has as its chief concern *distributional equality,* which is confounded by creditors' rush for payment on the "eve" of bankruptcy or other debtor adjudication. Its focus is not the absolute size of the debtor's estate; rather, its essential function is to move the determination date of the estate backwards in time to effect a *redistribution* among creditors. By contrast, fraudulent transfer law is not concerned with equality *among* creditors. Instead, its goal is *distributional enhancement* for a diligent creditor or, in the context of bankruptcy, for *all* creditors.[4] It achieves that aim through a policing of "windfalls" gained at the expense of a debtor's estate, without reference to *equality* among the universe of claims which may be made against that estate.

2. More fundamentally, the United States Supreme Court has emphasized that where, as here, the operative language of an applicable statute is plain and unqualified, courts should be loath to announce equitable exceptions thereto. *See, e.g., Guidry v. Sheet Metal Workers Nat'l. Pension Fund,* 493 U.S. 365, 376–77, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990). The creation of such non-textual equitable exceptions is especially problematic in the context of fraudulent transfer law, which is itself equitable in nature—acting to upset the pre-existing contractual rights and expectations between transferor and transferee. A statute's disruption of settled common-law rights is justified only on the view that the legislature's effectuation of broad social policies sometimes takes precedence over the legal rights as between particular parties. *See id.* It makes little sense for the legislature to strike a precise

balance between law and equity, only to have a court carve out an exception whenever application of that already "balanced" statute appears inequitable. As the Court in *Guidry* observed, "[a] court attempting to carve out an exception that would not swallow the [statutory] rule would be forced to determine whether application of the rule in particular circumstances would be 'especially' inequitable. The impracticability of defining such a standard reinforces our conclusion that the identification of any exception should be left to ... [the legislature]." *Id.*

## V. CONCLUSION

For the foregoing reasons, judgment shall enter in favor of the Defendant.

---

**4.** As utilized outside of bankruptcy, fraudulent transfer law's non-egalitarian nature and purpose are most starkly evident. In that context the law can be utilized by a single creditor to enhance its individual recovery without regard to the plight and fortunes of other creditors.