In re Lori L. TRUE, Debtor.

Richard Wilson, Trustee, Plaintiff,

v.

Lori L. True, et al., Defendants.

Bankruptcy No. 04–55309.
Adversary No. 05–5049.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

March 24, 2006.

Michael Moran, Gibson & Lowry, Cuyahoga Falls, OH, for plaintiff-trustee.

Thomas Palecek, for Wadsworth, OH, defendant-debtor.

Kenneth Michael Haneline, Kastner Westman & Wilkins, LLC, Adron, OH, for CHMCA.

## MEMORANDUM OPINION RE: MOTION TO DISMISS COMPLAINT

MARILYN SHEA–STONUM, Bankruptcy Judge.

This matter comes before the Court on the defendants' joint motion to dismiss the complaint [docket # 16], plaintiff-trustee's response brief [docket # 17] and defendants' joint surreply to plaintiff-trustee's response [docket # 18, exhibit 1]. This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this District on July 16, 1984. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (E) and (O) over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334(b).

### BACKGROUND

Based on the matters of record in this adversary proceeding, in the related main chapter 7 case and the stipulations of the parties [docket # 14], the Court makes the following findings of fact.

1. On September 29, 2004 Lori True initiated a chapter 7 bankruptcy proceeding.

2. At the time of the filing of her chapter 7 bankruptcy proceeding, defendant-debtor was an employee of Children's Hospital Medical Center of Akron ("CHMCA"). Stip. ¶ 2.

3. Defendant-debtor's employment with CHMCA has not terminated since the filing of her chapter 7 proceeding. Stip. ¶ 3.

4. CHMCA sponsors a written retirement program known as the Children's Retirement Income Benefit Plan (the "Plan"). Stip. ¶ 4.

5. At the time of her bankruptcy filing, defendant-debtor was a participant in the Plan. Stip. ¶ 13. During the pendency of her chapter 7 proceeding defendant-debtor's participant status in the Plan has not changed. Stip. ¶ 13.

6. At the time of her bankruptcy filing, defendant-debtor's Plan account balance was $9,312.70. Stip. ¶ 14. [The funds in the Plan which are attributable to defendant-debtor will hereinafter be referred to as the "Funds"].

7. On her amended Schedule C—Property Claimed as Exempt [main case—docket # 25], defendant-debtor claims an exemption in the Funds pursuant to Ohio Revised Code ("ORC") §§ 2329.66(A)(10)(a) and (A)(17). Plaintiff-trustee filed an objection to the claimed exemptions [main case—docket # 26]. To the extent that it necessitates separate briefs and/or a hearing, the exemption dispute in the main chapter 7 case is being held in abeyance pending the outcome of this adversary proceeding.

8. The Employee Retirement Income Security Act of 1974, as amended [29 U.S.C. § 1001 et seq.] ("ERISA") is applicable to the Plan. Stip. ¶ 6.

9. CHMCA is also the Plan Administrator for the Plan as such term is defined in § 1002(16) of ERISA. Stip. ¶ 7.

10. ERISA § 1056(d)(1) provides that each "pension plan shall provide that benefits under the plan may not be assigned or alienated." Stip. ¶ 8. The Plan contains such an anti-assignment/anti-alienation provision at § 7.2. Stip. ¶ 9.

11. The Plan's assets are held by a third party financial advisor (VAL-IC) for administrative and investment services pursuant to a custodial agreement. Stip. ¶ 12. There is no trustee agreement to hold Plan assets. Stip. ¶ 12.

## THE COMPLAINT AND THE STANDARD OF REVIEW

In his complaint, plaintiff-trustee contends that the Funds are property of defendant-debtor's chapter 7 bankruptcy estate and, thus, subject to turnover pursuant to §§ 542 and 543 of the Bankruptcy Code. In their motion to dismiss, defendants contend that the complaint fails to state a claim upon which any relief can be granted because the Funds are not estate property pursuant to § 541(c)(2) of the Bankruptcy Code. Defendants further contend that, even if the Funds are deemed to be estate property, they are exempt pursuant to Ohio Revised Code § 2329.66(A)(10)(a) and (A)(17). In support of their respective arguments, each party has relied upon matters outside of the complaint alone. When matters outside of the complaint are relied upon in conjunction with a motion to dismiss, the motion shall be treated as one for summary judgment. FED. R. BANKR. P. 7012(b); FED. R. CIV. P. 12(b).

A court shall grant a party's motion for summary judgment "if . . . there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); FED. R. BANKR. P. 7056. The party moving for summary judgment bears the initial burden of showing the court that there is an absence of a genuine dispute over any material fact and then the burden shifts to the nonmoving party to show the existence of a material fact which must be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994). Upon review, all facts and inferences must be viewed in the light most favorable to the nonmoving party. *Searcy v. City of Dayton*, 38 F.3d 282, 285 (6th Cir.1994); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir.1991).

## DISCUSSION

An interest of the debtor in property does not become property of that debtor's bankruptcy estate if there exists "[a] restriction on the transfer of a beneficial interest of the debtor *in a trust* that is enforceable under applicable nonbankruptcy law . . ." 11 U.S.C. § 541(c)(2) (emphasis added). Because the Funds are not being held by the third party financial advisor pursuant to a trust agreement, plaintiff-trustee contends that § 541(c)(2), by its very terms, does not apply. Defendants contend that the U.S. Supreme Court's holding in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) dictates that § 541(c)(2) applies to any plan, regardless of whether it is subject to a trust agreement, if it contains a transfer restriction enforceable under relevant non-bankruptcy law.

■ Regardless of whether defendant-debtor's interest in the Plan should be excluded from property of her chapter 7

bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2), this Court may first consider whether debtor's interest in the Plan is subject to an exemption under Ohio law. *See In re Sforzo,* 332 B.R. 294, 296 (Bankr. N.D.Ohio 2005). Defendant-debtor has claimed exemptions in the Funds pursuant to both ORC § 2329.66(A)(10)(a) and (A)(17). Whether ORC § 2329.66(A)(10)(a) applies is inherently and intensely factual and, thus, beyond the scope of the dispositive motion that is before the Court. *See, e.g., In re Hamo,* 233 B.R. 718, 723 (6th Cir. BAP 1999) (listing 11 non-exclusive factors to be considered to determine whether ORC § 2329.66(A)(10)(a) should apply such as debtor's health, debtor's ability to work and earn a living and debtor's job skills, training and education). ORC § 2329.66(A)(17) provides, in pertinent part, the following:

> (A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> ■ (17) Any other property that is specifically exempted from execution, attachment, garnishment, or sale by federal statutes other than the "Bankruptcy Reform Act of 1978," 92 Stat. 2549, 11 U.S.C.A. 101, as amended.

If the Funds would be protected from the reach of creditors outside of bankruptcy by operation of some federal statute other than the Bankruptcy Code then debtor may properly claim an exemption in the Funds pursuant to § 2329.66(A)(17).[1]

The parties have stipulated that the Plan is ERISA qualified and contains an anti-assignment/anti-alienation provision pursuant to 29 U.S.C. § 1056(d)(1). Notwithstanding such stipulations, plaintiff-trustee contends that ORC § 2329.66(A)(17) does not apply to a 403(b) tax deferred annuity because neither 26 U.S.C. § 403(b) nor ERISA provides for any federal exemption of tax deferred annuities Pl. Resp. at unnumbered pg. 5 [docket # 17]. Plaintiff-trustee does not provide any authority for this contention nor does he address why ERISA's anti-assignment/anti-alienation provision, alone, would not protect the Funds from the reach of creditors.

■ In *Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990) the Supreme Court was asked to determine whether funds which were subject to ERISA's anti-assignment/anti-alienation provision could be used to satisfy a restitution judgment against a jailed former union leader who was convicted of embezzling funds from the union. In determin-

---

**1.** In his response, plaintiff-trustee contends that "[t]he Debtor ... has never claimed her interest in this annuity contract to be exempt under § 2329.66(A)(17). Instead, she has claimed an exemption under § 2329.66(A)(10)." Pl. Resp. at unnumbered pg. 5 [docket # 17]. Although defendant-debtor's originally filed Schedule C only claimed an exemption in the Funds pursuant to ORC § 2329.66(A)(10), an amended Schedule C, claiming an exemption pursuant to § 2329.66(A)(17), was filed on May 16, 2005. *See* docket # 25 in main case. On May 19, 2005, plaintiff-trustee filed an objection to

debtor's claim of exemption under both § 2329.66(A)(10) *and* (A)(17) on the basis that the Funds do not qualify for either exemption. *See* docket # 26 in main case. Plaintiff-trustee's objection does not allege that an exemption pursuant to § 2329.66(A)(17) was not properly or timely claimed. Given that plaintiff-trustee's response in this adversary proceeding was filed 4 months *after* his objection in the main case was filed, his contention that defendant-debtor has never claimed an exemption pursuant to § 2329.66(A)(17) is not well taken and will not be discussed any further.

ing that § 1056(d)(1) of ERISA precludes the use of qualified funds to satisfy a judgment, the Supreme Court set forth the following:

> Both the District Court and the Court of Appeals presumed that [§ 1056(d)(1)] of ERISA erects a general bar to garnishment of pension benefits from plans covered by the Act. This Court, also, indicated as much, although in dictum, in *Mackey v. Lanier Collection Agency & Service, Inc.,* 468[486] U.S. 825 ... [108 S.Ct. 2182, 100 L.Ed.2d 836] (1988). In *Mackey* the Court held that ERISA does *not* bar the garnishment of welfare (*e.g.,* vacation) benefits. In reaching that conclusion, it noted that [§ 1056(d)(1)] proscribes the assignment or alienation of *pension* plan benefits, but that no comparable provision applies to ERISA *welfare* benefit plans. *Id.,* at 836 [108 S.Ct. 2182] .... It reasoned that "when Congress was adopting ERISA, it had before it a provision to bar the alienation or garnishment of ERISA plan benefits, and chose to impose that limitation only with respect to ERISA pension benefit plans, and *not* ERISA welfare benefit plans." *Id.,* at 837 [108 S.Ct. 2182] .... The view that the statutory restrictions on assignment or alienation of pension benefits apply to garnishment is consistent with applicable administrative regulations, with the relevant legislative history, and with the views of other federal courts. It is also consonant with other statutory provisions designed to safeguard retirement income. We see no meaningful distinction between a writ of garnishment and the constructive trust remedy imposed in this case. That remedy is therefore prohibited by [§ 1056(d)(1)] unless some exception to the general statutory ban is applicable.

*Guidry v. Sheet Metal Workers Nat. Pension Fund,* 493 U.S. 365, 371–72, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990). The Court then went on to analyze whether, under the facts of the case, there existed an exception under the Labor Management Reporting and Disclosure Act of 1959 to ERISA's ban on using qualified funds to satisfy a judgment. The Court found no such exception and then determined that an equitable exception should also not apply.

> Nor do we think it appropriate to approve any generalized equitable exception—either for employee malfeasance or for criminal misconduct—to ERISA's prohibition on the assignment or alienation of pension benefits. [Section 1056(d)(1)] reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task.

*Guidry v. Sheet Metal Workers Nat. Pension Fund,* 493 U.S. 365, 376, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990).[2] The Sixth Circuit, citing *Guidry,* noted that the "Supreme Court appears to have drawn a bright line rule concerning the alienability of pension benefits: they may not be alienated either voluntarily or involuntarily, inside or outside of bankruptcy, or for equitable reasons." *McGraw v. Society Bank*

---

**2.** Subsequent to the Supreme Court's decision in *Guidry* Congress enacted the Mandatory Victim Restitution Act of 1996 [18 U.S.C. § 3613(a)] which creates an exception to the anti-assignment/anti-alienation provision of ERISA for fines and restitution orders. *See, e.g., U.S. v. Irving,* 432 F.3d 401, 417 (2nd Cir.2005); *U.S. v. James,* 312 F.Supp.2d 802 (E.D.Va.2004).

& *Trust (In re Bell & Beckwith)*, 5 F.3d 150, 152 (6th Cir.1993). The Sixth Circuit also noted that the Supreme Court adhered to its reasoning in *Guidry* "when it determined in *Patterson v. Shumate* ... that ERISA's anti-alienation protection applies in the context of bankruptcy as well, so that a bankrupt's pension benefits were excluded from his bankruptcy estate." *Id.*[3]

In his response, plaintiff-trustee claims the Funds are not protected by § 1056(d)(1) of ERISA because the Plan is a 403(b) tax deferred annuity account and not a trust.

As previously noted the Plan which the Supreme Court was addressing [in *Patterson*] was a qualified plan under ERISA. It, by necessity, involved a trust. A 403(b) custodial account is not a qualified plan. It is, instead, a specific savings vehicle which for the internal revenue service code [sic] is treated in a manner similar in certain respects to qualified pension plans.

\* \* \* \* \* \*

The United States Congress under § 403(b) authorized an income tax deduction from gross earnings for monies deposited into these types of custodial accounts. In order to qualify for the tax deduction it was required that restrictions be imposed upon the ability to withdraw these funds. No statute says that this property is exempt from the claims of creditors.

*See* Pl. Resp. at unnumbered pg. 6 [docket # 17]. Although this trust / non-trust distinction may have some bearing on whether § 542(c)(2) of the Bankruptcy Code applies to the Funds, it does not act to eliminate the protections afforded by ERISA § 1056(d)(1).

ERISA generally requires that all assets of an employee benefit plan be held in trust. *See* 29 U.S.C. § 1103(a). ERISA, however, specifically exempts § 403(b) annuity plans from its trust requirement. *See* 29 U.S.C. § 1103(b)(5). The reason for this exception appears to be a response to lobbying by insurance companies and not an attempt by Congress to somehow

---

**3.** In *Bell & Beckwith*, unlike in this case, the Sixth Circuit was asked to address the propriety of the pension benefits.

> In neither *Guidry* nor *Patterson* was the propriety of pension contributions at issue. Here, according to [the bankruptcy trustee], the district court, rather than carving out an equitable exception to ERISA, simply said that any contributions made on behalf of [the partners] in violation of the net income requirement of the plan would be void *ab initio*. Since void, they never became a part of the plan, and so were not being alienated within the contemplation of the ERISA prohibition. [The bankruptcy trustee] therefore contends that the policy concerns of *Guidry* and *Patterson* are not implicated in the present case. We agree. What is unique about the plan in this case is that it is a profit-sharing plan, where the terms of the plan comport with shared liability concepts of partnership law by providing that money would be available for making contributions to the plan on behalf of the partners only when the partnership could lay claim to net income. Because the plan expressly limited contributions to being made out of [the partnership's] net income, contributions fraudently made on behalf of partners, or induced by a partner's fraud, when there was no net income would be void *ab initio*. Since the partners had no right to expect contributions to the pension plan would be made on their behalf when the partnership had no profits, they are in no position to complain should those contributions be returned to the partnership's estate. Unlike the situations in *Patterson* and *Guidry*, there are no public policy considerations arguing that the contributions deserve to be shielded by ERISA from the reach of the creditors of [the partnership's] estate.

*McGraw v. Society Bank & Trust (In re Bell & Beckwith)*, 5 F.3d 150, 153 (6th Cir.1993).

afford less protection to a § 403(b) annuity plan than to a trust.

Since 1942, and long before the enactment of ERISA, there has been a tax statute, in one form or another, that allowed employees of certain charitable organizations to defer income under a tax-sheltered annuity arrangement.... Section 403(b) of the Internal Revenue Code was added by Congress in 1958 in order to restrict the amount of compensation deferrable under such annuity arrangements, since some charitable employers were 'paying selected employees all, or almost all, of their compensation in the form of annuities.' ... Section 403(b) continued the deferral, but provided a formula for limiting the amount deferred according to the employee's compensation and length of service. No trust was required or employed as a part of these tax-sheltered annuity arrangements.

[W]hen ERISA was first proposed as a comprehensive piece of legislation to govern pension plans in the United States, the insurance companies, having done a good business of selling retirement annuities to charitable organizations, wished to keep that business. Since insurance companies are in the business of selling contracts, not acting as trustees, it was necessary for them to obtain an exception from ERISA's general rule that plan assets were to be held in trusts. In effect, the previous practice of the insurance companies was grandfathered in. Under the new ERISA, as Congress made clear,

> A trust is not to be required in the case of plan assets which consist of insurance (including annuity) contracts or policies issued by an insurance company qualified to do business in a State (or the District of Columbia). The same exemption will apply to the new section 403(b) custodial account arrangement involving investment in mutual funds, since these are treated as amounts contributed for an annuity contract under the tax law. Although these contracts need not be held in trust, nevertheless, the person who holds the contract is to be a fiduciary and is to act in accordance with the fiduciary rules of the substitute [bill of the conference committee] with respect to these contracts. For example, this person is to prudently take and keep exclusive control of the contracts, and is to use prudent care and skill to preserve this property.
>
> To the extent that plan assets are held by an insurance company they need not be held in trust.

Subcommittee on Labor of the Senate Committee on Labor and Public Welfare, 93rd Cong.2d Sess., Report on Employee Retirement Income Security Act, Pub.L. No. 93–406 (Comm. Print 1974).

*Rhiel v. Adams (In re Adams),* 302 B.R. 535, 542–43 (6th Cir. BAP 2003).

■ Pursuant to the Supreme Court's decision in *Guidry,* this Court finds that the anti-assignment/anti-alienation clause in § 1056(d) of ERISA constitutes a federal statute, other than the Bankruptcy Code, that specifically exempts funds in an ERISA qualified plan from execution, attachment, garnishment or sale. Accordingly, defendant-debtor may rightfully claim the Funds as exempt from her bankruptcy estate pursuant to ORC § 2329.66(A)(17) and the Funds need not be turned over to plaintiff-trustee

## CONCLUSION

Defendants have met their burden of demonstrating that there exist no genuine issues of material fact and that they are entitled to judgment as a matter of law and plaintiff-trustee has not shown the

existence of a material fact that must be tried. Accordingly, defendants' motion to dismiss plaintiff-trustee's complaint is well taken and will be granted by a separate pleading to be entered in this proceeding.