**UNITED STATES of America**

v.

**Steven TENCER, et al.**

**No. CRIM. 92-570.**

United States District Court,
E.D. Louisiana.

Oct. 27, 1997.

Constantine D. Georges, U.S. Atty's Office, New Orleans, LA, for U.S.

John Robert Martzell, Martzell & Bickford, New Orleans, LA, Virginia Laughlin Schlueter, Federal Public Defender, New Orleans, LA, Patrick C. McGinity, John E. DiGiulio, Morris H. Hyman, New Orleans, LA, Carl Michael Seibert, Huntsville, AL, James Holland Looney, Covington, LA, for Defendant Steven B. Tencer.

Virginia Laughlin Schlueter, Veronica Angela Collins, Federal Public Defender, New Orleans, LA, James A. McPherson, New Orleans, LA, Frank G. DeSalvo, Frank G. DeSalvo, A Professional Law Corp., John Marcus Ellis, Jerome M. Winsberg, New Orleans, LA, for Defendant Ronald Lazar.

Patricia A. Bethancourt, Burglass & Associates, Metairie, LA, for Movant Louisiana Health Service & Indem. Co.

James R. Barnett, Scott R. Jamison, Gordon & Barnett, Washington, DC, Gerald A. Melchiode, Taylor, Wellons & Politz, L.L.C., New Orleans, LA, for Movant· Continental Assur. Co.

Robert H. Urann, Robein, Urann & Lurye, Metairie, LA, for Movant NALC Health Ben. Plan.

## ORDER AND REASONS

BERRIGAN, District Judge.

This matter comes before the Court on two motions: a motion to apply seized funds not subject to forfeiture to the payment of restitution and fines filed by the United States of America, and a motion for release of seized property filed by the defendant, RONALD LAZAR.[1] Having considered the record, the

---

1. Co-defendant STEVEN TENCER filed a motion to adopt the supplemental memoranda of defendant RONALD LAZAR concerning the issue of the release of seized property. This motion was granted. Where the memoranda filed by LAZAR do not address the same concerns as those faced by TENCER the Court will so state.

memoranda of counsel, and the law, the Court has determined that the motion of the United States should be DENIED in part and GRANTED in part, and the motion of defendant LAZAR should be GRANTED conditionally and DENIED in part.

## BACKGROUND

STEVEN TENCER and RONALD LAZAR operated Allied Chiropractic Clinic in Kenner, Louisiana. Following investigations into the clinic's insurance billing procedures, the government seized several vehicles and funds from various bank accounts belonging to TENCER and LAZAR.[2] They were indicted on counts of conspiracy, mail fraud and money laundering. A jury trial ensued, TENCER and LAZAR were convicted on most counts, and the Court ordered both defendants to serve prison sentences and pay fines.[3] Defendant TENCER was also ordered to pay restitution to the victims of his crimes. At the end of the trial, the jury decided that all seized properties were subject to forfeiture.

Subsequently, the defendants moved for judgments of acquittal on several counts. When the Court partially granted these motions, the forfeitures based on those counts were vacated. Among the assets deemed not subject to forfeiture was a check drawn from the Corestates Bank of Delaware made payable to the United States, representing all funds contained in RONALD LAZAR's qualified pension fund. These funds are the subject of the motions at issue.[4]

The government requests that the seized pension plan funds be applied to TENCER's order of restitution on the basis that TENCER will not be able to pay full restitution without these assets, and that the seized funds actually belong to TENCER, the trustee of the pension funds, and not LAZAR, the annuitant. The government notes that the Court must first determine whether the pension plans are still in effect, and if so, whether the plans permit distribution of the benefits to the defendants.

If the Court finds that the plans are in effect and if either defendant seeks a personal distribution from their respective pension funds, the government asks the Court to order TENCER to pay his restitution immediately and to amend its judgment and order LAZAR to assist in paying restitution. If the Court does not choose to order LAZAR to pay restitution, the government suggests it is within the Court's discretion to alter defendant LAZAR's payment plan so that he might pay immediately the balance due on his fine if he does seek a distribution from his pension fund. Despite the government's requests, it concedes that "if the funds are to remain in an existing qualified pension fund, maintained by a qualified trustee, the court cannot order that the funds be used for the payment of fines or restitution." (Rec.Doc. 326, p. 8).

■ The government also seeks to apply the funds seized from TENCER's Dean Witter Reynolds money market account to his restitution order. The Court grants this aspect of the government's motion. Under 18 U.S.C. § 3664(k), a court may accept notification of a material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution. Upon receipt of the notification, the court may adjust the payment schedule or require immediate payment in full. Further, 18 U.S.C. § 3664(n) provides that

If a person obligated to provide restitution ... receives substantial resources from any source ... during a period of incarceration such person shall be required to ap-

---

2. All property was seized pursuant to the issuance of search warrants.

3. The Court established a schedule whereby the defendants were to begin paying their fines while in prison. Upon release, they were ordered to pay a monthly installment on the remaining balance. TENCER is still incarcerated, LAZAR is not.

4. TENCER's seized funds not subject to forfeiture include: $63,119.46 from a Dean Witter Reynolds money market account, funds from an ERISA-qualified pension plan totalling $201,111.40, and $89,610.51 from a non-qualified annuity account with the Prudential Insurance Company of America issued in the name of Sandra A. Tencer, TENCER's ex-wife. (Rec.Doc. 322, pp. 1–2).

ply the value of such resources to any restitution ... still owed.

Thus, this Court has the ability to modify TENCER's restitution order to require him to apply the funds he would receive from the release of his Dean Witter Reynolds account directly to payment of restitution.

Defendant LAZAR (and through incorporation, defendant TENCER) offers several theories to support his motion for release of his seized pension plan assets. He contends that the anti-alienation provision of the Employee Retirement Income Security Act (29 U.S.C. § 1001 et seq., hereinafter referred to as ERISA) as interpreted by the United States Supreme Court and the United States Fifth Circuit Court of Appeals protects the assets in his ERISA-qualified pension fund from the government's claims. 29 U.S.C. § 1056(d)(1).[5] Further, he asserts the government should not overlook the Court-ordered payment schedule relating to his fine.[6] LAZAR also maintains that if the government seizure of the pension fund assets terminated the pension plan, this was in violation of 29 U.S.C. § 1140.[7] While recognizing that several circuits have allowed restitution to be paid from funds actually disbursed under a qualified pension plan, LAZAR protests that "[n]o court has demanded the surrender of assets of a pension fund that was terminated as a result [of] statutorily prohibited government actions." (Rec.Doc. 332, pp. 2–3).

### ANALYSIS

### TENCER'S OWNERSHIP INTEREST IN THE SEIZED PENSION PLANS

■ The government asserts that the seized funds deemed not subject to forfeiture should be applied to the payment of TENC-ER's restitution order because TENCER, as trustee of the plan, had ownership rights in the funds therein. This argument fails in light of 29 U.S.C. § 1111(a), Section 411(a) of ERISA. This section provides that

No person who has been convicted of, or has been imprisoned as a result of his conviction of ... a violation of chapter 63 of Title 18 [18 U.S.C. § 1341 et seq., Mail Fraud] ... or conspiracy to commit any such crimes ... shall serve or be permitted to serve—

(1) as an administrator, fiduciary, officer, trustee, custodian, counsel, agent, employee, or representative in any capacity of any employee benefit plan ... during or for the period of thirteen years after such conviction or after the end of such imprisonment, whichever is later.

For the purposes of the above section, "a person shall be deemed to have been 'convicted' and under the disability of 'conviction' from the date of the judgment of the trial court, regardless of whether that judgment remains under appeal." 29 U.S.C. § 1111(c)(1). Therefore, any ownership rights TENCER may have had in the pension plan as its trustee have been vitiated by his criminal conviction. Funds not belonging to TENCER should not be used to pay his restitution. However, if TENCER seeks distribution of funds from his ERISA-qualified pension plan, they can be applied to his order of restitution.[8]

■ In addition, it is well established that pension plans are created for the benefit of the employee (LAZAR), not the employer (TENCER). 29 U.S.C. § 1001. To use the funds in LAZAR's pension plan to enable his

---

**5.** The relevant language in ERISA is as follows: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." LAZAR cites the following to support his position: *Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990); *Herberger v. Shanbaum,* 897 F.2d 801 (5th Cir.1990); and *U.S. v. Gaudet,* 966 F.2d 959 (5th Cir.1992).

**6.** Such an argument has no bearing on defendant TENCER.

**7.** "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan ..."

**8.** At sentencing, the Court ordered that TENCER's payment of restitution be paid out of seized funds released from the forfeiture.

co-defendant to pay restitution stands in direct opposition to the goals of ERISA.

Further, the government asks that the Court, if it should find that the anti-alienation provision applies to the funds that were in the ERISA qualified plans, make those proceeds available to the pension plans only when a qualified trustee is in control. (Rec. Doc. 348, p. 3). By making this request, the government seems to concede that, absent a finding that the pension plans were not ERISA-qualified, it has no right to the monies seized from the funds.

The government recognizes, as does this Court, that the anti-alienability provision does not apply if the defendants seek to obtain an early withdrawal of the funds.[9] While LAZAR does request that the seized funds should be "returned to him forthwith," the Court reads his request as one for a return of the funds to the pension plan. (Rec.Doc. 350, p. 3).

## WHETHER THE PENSION PLANS ARE STILL IN EFFECT

The government next maintains that if the Court finds the pension plan is still in effect for the benefit of LAZAR, and if he seeks a distribution from the pension fund, then the Court has the discretion to amend its judgment and order LAZAR to assist in paying restitution.

■ The issue of whether an ERISA-qualified pension plan is still in effect despite the government's seizure of the funds therein seems to be one of first impression. The funds at issue were seized pursuant to a warrant, the issuing judge having found probable cause to believe the funds were traceable to the defendants' criminal conduct. The assets in the plans were each reduced to one check payable to the United States. The Court must determine to whom the checks must now go.

If the check is deposited back into ERISA-qualified pension plans created for the benefit of LAZAR and TENCER, the government has no claim to the funds because of the anti-alienation provision of ERISA. If the funds are returned directly to LAZAR, the government suggests that the Court order LAZAR to use these funds to help his codefendant pay restitution. The government offers no legal support for this argument, and it is therefore rejected.

Because the pension plan funds at issue were deemed not subject to forfeiture as a result of the judgments of acquittal, it seems fitting that the money should be returned to the pension plans from which it was seized. Based on the legislative history and Congressional intent behind ERISA, as well as various courts' statutory interpretations of the Act, the Court concludes that the goals of ERISA would be best met if the funds are returned to the pension plan established for the benefit of the defendants.[10]

■ However, the issue of trusteeship of the plan is still problematic. As both parties now recognize, TENCER is no longer eligible to serve as trustee of his or LAZAR's pension fund because of his criminal conviction. Once a trustee is appointed, the government will not have any claim to the funds in the plans. Thus, the Court conditions its order that LAZAR's motion be granted on the appointment of a trustee to oversee the pension plan. A trustee must also be appointed for TENCER's plan. As noted earlier, if he seeks a distribution from the ERISA-qualified plan, that money shall be applied to the payment of restitution.

If LAZAR seeks a direct receipt of the funds, the government shall be able to apply a sufficient amount of the funds to pay the balance owed on his fine. The Court based its decision to allow LAZAR to make monthly payments on his fine on his lack of assets.

9. *Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 39 F.3d 1078, 1081 (10th Cir.1994) (reh'g en banc) (on remand from the United States Supreme Court); *Trucking Employees of North Jersey Welfare Fund, Inc. v. Colville,* 16 F.3d 52, 55 (3d Cir.1994).

10. The United States Supreme Court stated that the anti-alienation provision of ERISA, "Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners ... even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task." *Guidry,* 493 U.S. at 377, 110 S.Ct. at 687.

If LAZAR was able to withdraw money from his pension plan, this would amount to a material change in his circumstances warranting immediate payment of the fine.

THE ISSUE OF INTEREST

 In LAZAR's Third Supplemental Memorandum of Law in Support of His Motion for Release of Seized Property, LAZAR asserts that he should receive interest on the seized funds. In support of this, he refers to *U.S. v. $277,000 U.S. Currency,* 69 F.3d 1491 (9th Cir.1995). In that case, the Ninth Circuit Court of Appeals held that when funds wrongfully seized by the government are placed in an interest-bearing account, the rightful owner of the funds has a right to the funds and any interest they earned while in the government's control. Such a holding is not applicable in this case. The funds seized from LAZAR's pension plan were not deposited in an interest-bearing account. Therefore, *U.S. v. $277,000* does not control.

There is one account at issue on which the Court is not ruling at this time: the $89,-610.51 from a non-qualified annuity account with the Prudential Insurance Company of America issued in the name of Sandra A. Tencer, TENCER's ex-wife. It does not appear that Sandra Tencer is represented in this matter. In addition, it is unclear whether she has even been notified that funds from an account issued in her name are the subject of the government's motions. Thus, the Court will not make any ruling on these funds at present.

Accordingly, **IT IS ORDERED** that defendant LAZAR's motion for release of seized property be **GRANTED** on the condition that a trustee is appointed to oversee the ERISA-qualified pension plan. If LAZAR seeks a distribution, a sufficient amount of the funds shall be applied to pay the balance owed on his fine. LAZAR's motion to receive interest on seized funds not subject to forfeiture is **DENIED.**

The government's motion to apply funds seized from LAZAR's ERISA-qualified pension plan to the payment of restitution is **DENIED.** The government's motion to apply funds seized from TENCER's ERISA-qualified pension plan to the payment of restitution is **DENIED** unless TENCER seeks

a distribution, at which point the funds shall be applied to payment of his restitution order. The government's motion to apply funds seized from TENCER's Dean Witter Reynolds account is **GRANTED.**

This order shall not go into effect for fifteen days. During this time, TENCER's attorney and the government shall send copies of the order to Sandra Tencer at her last known address.