J-S59020-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRANDON PATTERSON | : | |
| | : | |
| Appellant | : | No. 3432 EDA 2018 |

Appeal from the Judgment of Sentence Entered October 22, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009603-2017

BEFORE: LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY NICHOLS, J.:               **FILED FEBRUARY 14, 2020**

Appellant Brandon Patterson appeals from the judgment of sentence following a jury trial and convictions for possession of a controlled substance with intent to deliver (PWID).[1]  On appeal, Appellant contends the trial court erred by permitting a Commonwealth witness to testify generally about the concerns that confidential informants have about their safety.  We affirm.

The parties do not dispute the following facts, which were elicited at trial.

> The Commonwealth called Police Officer John Mouzon as its first witness [at trial].  Officer Mouzon testified that he worked in the Narcotics [Field] Unit and often worked with CIs.  He stated that CIs['] identities are typically kept confidential for the CIs' safety and in order to preserve the integrity of ongoing investigations.  He stated that on August 24, 2017, a CI was sent to a house at 3109 North 24th Street in order to engage in a controlled drug

---

[1] 35 P.S. § 780-113(a)(30).

transaction. Officer Mouzon stated that he served as the "eye" and observed all of the CI's actions. The CI made a controlled purchase from [Appellant] while Officer Mouzon watched in plainclothes from an unmarked vehicle, with two additional police officers serving as backup. The CI turned over four knotted clear bags of marijuana. Later that same day, the CI returned to 3109 North 2[4]th Street to make another controlled buy from [Appellant]. This time, he purchased two bags of crack cocaine. Officer Mouzon testified that he obtained a search warrant and returned to 3109 North 24th Street the next day. Officer Mouzon testified that he knocked on the door and then waited on the curb. He saw [Appellant] open the door, look up and down the block, and then go back inside. Approximately one minute later, the police officers knocked at the door again but no one opened the door. Police officers used a Halligan tool[2] to break the lock and a battering ram to knock the door down. When they entered the property, [Appellant] was lying on the couch next to the front door with his eyes closed. He claimed he had been sleeping. After [Appellant] was placed under arrest, police officers lifted the couch cushions and recovered a .380 caliber revolver. From [Appellant's] person, police recovered marijuana as well as keys that locked and unlocked the front door of the residence. From the living room area, police recovered new and unused Ziploc baggies, a scale, and a book bag with [Appellant's] identification card inside.

Next, [Appellant] asked that his counsel be removed from his case and that he be assigned new defense counsel. [The trial court] denied his request.

Police Officer Barry Charles testified next for the Commonwealth. Officer Charles testified that on August 24, 2017, he was working with a CI on the 3100 block of N. 24th Street. He stated that he and Officer Wimms met with the CI, searched him for contraband, and with coordination from Officer Mouzon, sent the CI to make a purchase. When the CI returned, he gave Officer Charles four knotted plastic baggies containing marijuana. Officer Charles testified that later that same day, the CI made an additional purchase and turned over two green, heat-sealed packets of crack

_____

[2] A Halligan tool is "similar to a crowbar." ***Chamberlain v. White Plains***, 986 F. Supp. 363, 375 (S.D.N.Y. 2013).

cocaine. Officer Charles stated that he accompanied other police officers the next day when they executed their search warrant at 3109 N. 24th Street but did not enter the property.

Police Officer Mario Cruz testified next for the Commonwealth. Officer Cruz stated that on August 25, 2017, he assisted in executing a search warrant at 3109 N. 24th Street. He stated that he observed Officer Mouzon knock on the door and then return to the sidewalk. [Appellant] opened the front door, looked up and down the block, and then closed the door. Shortly thereafter, the police knocked and announced their presence. When no one answered the door, they entered the property by forcefully ramming in the door. Officer Cruz testified that when he entered the residence, he observed [Appellant] on the couch feigning sleep. From [Appellant's] person, police recovered a bag of marijuana and a set of keys. Officer Cruz stated that he questioned [Appellant] in order to fill out the biographical information for [police] paperwork. Officer Cruz also searched the living room and recovered a book bag containing a black plastic bag holding a box of .32 cartridges. From a different black bag in the living room, Officer Cruz recovered several new and unused sandwich bags as well as a scale. Last, Officer Cruz recovered a cell phone and an ID card with [Appellant's] photo on it.

Next, Police Officer Carl Stubbs testified for the Commonwealth. Officer Stubbs testified that he served as backup to the police officers executing the search warrant at 3109 N. 24th Street. Officer Stubbs stated that he helped force the door down with the battering ram and then saw [Appellant] lying on the couch, purportedly asleep. After other officers moved [Appellant] and placed him in handcuffs, Officer Stubbs flipped the couch cushion where [Appellant] had been resting and recovered a loaded black Smith & Wesson .38 special firearm.

Police Officer Stephen Berardi, a member of the Crime Scene Unit, testified next for the Commonwealth as an expert in crime scene investigations and the recovery of latent prints and DNA from firearms. Officer Berardi testified regarding the process used to identify and collect fingerprints and DNA evidence from firearms, including the factors that make this process difficult. He testified that over the course of his career, he had tested between 200-300 firearms for fingerprints and DNA, and out of those, recovered only three identifiable prints and two successful DNA comparisons. Officer Berardi testified that he did not examine or test the firearm

recovered from [Appellant's] couch, stating that there was very little likelihood that there would have been identifiable fingerprints or DNA due to contamination and the fact that it had been found between couch cushions.

Next, counsel entered evidence by way of stipulation by and between counsel. First, counsel stipulated that if Police Firearms Identification Unit Officer Raymond Andrejczak were called to testify as an expert in the field of firearms identification and analysis, he would testify that he received a Smith & Wesson Model 442 .38 caliber special revolver, that this firearm was loaded with five live rounds, that he test-fired the firearm and determined that it was operable. Second, counsel stipulated that if Police Analyst Valerie Davis were called to testify as an expert in chemical analysis and identification of controlled substances, she would testify that she received four clear plastic bags containing .472 grams of marijuana and two green Ziploc bags containing .047 grams of crack cocaine and that they were tested and found to be controlled substances. Third, counsel stipulated that if Police Analyst Doris Dean were called to testify as an expert in chemical analysis and identification of controlled substances, she would testify that she received one clear bag of marijuana recovered from [Appellant's] person, that it weighed 3.344 grams, and that it was tested and found to be a controlled substance. At the conclusion of stipulations, the Commonwealth moved its exhibits into evidence and rested.

[Appellant] called Court Clerk Joyce Scott . . . as [his] only witness. [Appellant's] counsel showed Scott the criminal complaint filed by the District Attorney's Office in this matter and asked Scott to read the address listed for [Appellant]. Scott stated that the address listed was 3123 N. Judson Street, Philadelphia, Pennsylvania.

Trial Ct. Op., 5/13/19, at 2-6 (citations omitted and some formatting altered).

Appellant was arrested and charged with, among other things, possession with the intent to deliver a controlled substance. On March 1, 2018, Appellant filed a motion to reveal the CI's identity. Appellant did not

seek to preclude testimony about the general safety concerns of CIs in general. The trial court denied the motion on March 14, 2018.

On August 19, 2018, Appellant filed a motion *in limine* seeking to preclude the Commonwealth from introducing "any and all testimony that the confidential informant's safety may be jeopardized and/or has been jeopardized." Mot. *in Lim*., 8/19/18, at 1 (unpaginated). In pertinent part, Appellant sought to specifically preclude testimony that the CI in question "had to move three times, that the [CI's] family ha[d] been threatened, that their home was vandalized, etc." *Id.* Appellant reasoned that such testimony was not relevant and more prejudicial than probative. *Id.* at 3.

On August 21, 2018, the trial court held a hearing on Appellant's motion. The trial court began by restating Appellant's issue as the CI's "safety may be jeopardized or has been jeopardized." Immediately following the trial court's restatement, the below exchange ensued, during which Appellant's counsel did not object to testimony about the generalized safety concerns of CIs in general:

> [Commonwealth]: Your Honor, I anticipate that my colleague, whether she asks for the missing instruction or not, is going to argue the substance of it and argue to the jury that we should have called the confidential informant, that we could have called the confidential informant, that we had the ability to do so and chose not to do, and that they should feel a certain kind of way about that. In order for me, at closing, to –
>
> THE COURT: Let me ask, were you intending to argue that?
>
> [Appellant's trial counsel]: The defense's argument would be that the drug sales happened between the drug dealer and the

confidential informant, that the confidential informant was the one that had the face-to-face interaction and the confidential informant is not here.

THE COURT: You're not asking for the missing witness instruction on the confidential informant; is that what you're saying?

[Appellant's trial counsel]: I mean, Your Honor, we may ask it as the trial moves forward.

THE COURT: You may, okay. So, then I have to deal with it if it's something you may ask for. Well, I guess we're really going to have to cross that bridge when we get to it. It depends upon what testimony is elicited concerning -- so, which one of your witnesses would be testifying about the confidential informant?

[Commonwealth]: It would be the eye, Police Officer Mouzon. And, it wouldn't be anything specific in relation to this confidential informant or threats by this defendant against a confidential informant. It would just be information about what happens to confidential informants, generally, when their identity is exposed. That allows me to fortify my case against the argument that because we failed to call this person, the jury needs to make some sort of inference about my decision not to do that, because it allows me to say to them: You heard what happens when confidential informants' identities are exposed. Coming to court and testifying is the same thing as exposing their identity, and that's why I chose to do that.

THE COURT: The motion in limine with regard to that is denied. Anything else? Hearing nothing else from either counsel, correct?

N.T., 8/21/18, at 10-12. Appellant's trial counsel did not object.

Subsequently, Appellant was tried by a jury and convicted of PWID. Following a pre-sentence investigation, the trial court sentenced Appellant to seventeen months to sixty months' incarceration on October 22, 2018. Appellant did not file a post-sentence motion and timely appealed on

- 6 -

November 21, 2018. Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

Appellant raises one issue on appeal:

> Did not the trial court err as a matter of law in allowing the Commonwealth to introduce Officer Mouzon's testimony regarding the general safety concerns of confidential informants, as any and all testimony that the confidential informant's safety may be jeopardized and/or has been jeopardized was not relevant in this case under Pennsylvania Rules of Evidence 401 and 402, and was inadmissible under Rule 403 because it is prejudicial?

Appellant's Brief at 3.

Before summarizing Appellant's argument, we set forth the following as background. During her opening statement, Appellant's counsel stated that the Commonwealth's confidential informant would not testify. N.T. Trial, 8/22/18, at 30 ("You'll also hear, shockingly and most astonishingly, that this secret informant that was employed to buy drugs, that secret informant will not testify during this trial.").[3]

During the Commonwealth's case-in-chief, the below testimony was elicited:[4]

---

[3] The trial court, in its Pa.R.A.P. 1925(b) opinion, stated that Appellant had argued "that the Commonwealth should have called the CI to testify and that by not doing so, the police possibly were fabricating charges and were denying [Appellant] his right to confrontation." Trial Ct. Op. at 6. Appellant's counsel did not address this in her opening argument.

[4] We note that the Commonwealth, unlike Appellant, provided pinpoint citations to the trial testimony relevant for Appellant's issue on appeal.

[Commonwealth:] Officer [Mouzon], you're here today because of a narcotics investigation that occurred over the course of August 24th and 25th of 2017, correct?

[Officer Mouzon:] That's correct.

[Q:] What was the number of the CI you used for that operation?

[Officer Mouzon:] 1079.

[Q:] For how long have been using that CI?

[Officer Mouzon:] I've used that CI numerous times, but they also worked with other members of the Narcotics Field Unit in my squad. They actually – that particular CI is assigned to another officer, where they've worked with him for over 15 years.

[Q:] Have you ever told me who CI 1079 is?

[Officer Mouzon:] No.

[Q:] Have you ever told anyone in my office who 1079 is?

[Officer Mouzon:] No.

[Q:] Have you ever told anyone from my office the identity of any CI with whom you've worked with?

[Officer Mouzon:] No.

[Q:] Why don't you do that?

[Officer Mouzon:] Just, basically, to keep the identity of the CI confidential, and also for the CI's safety.

[Q:] What would happen to the CI's safety if you revealed the information?

[Officer Mouzon:] Well, basically, I think --

[Appellant's Counsel:] Objection, Your Honor.

THE COURT: Rephrase the question.

[Q:] What would the safety concern be if a CI's information was to be released?

[Officer Mouzon:] Well, their life could be in jeopardy, because a lot of times they give us information of different locations, that persons lives within the City of Philadelphia. And, we also have open investigations where those investigations could be jeopardized if they're known to the public exactly who that person is that's giving us information and they're working with the police.

[Appellant's trial counsel:] Your Honor, objection.

THE COURT: Overruled.

N.T. Trial, 8/22/18, at 40-42.

In this direct appeal, Appellant argues that the trial court erred by permitting Officer Mouzon to testify about "the general safety concerns of confidential informants." Appellant's Brief at 12. In Appellant's view, such testimony was not relevant and even if relevant, was more prejudicial than probative. *Id.* at 12-14. Appellant asserts the Commonwealth improperly introduced this irrelevant evidence to create "an impression that the informant had been threatened by" Appellant. *Id.* at 14. But, Appellant claims, the Commonwealth presented no evidence of any actual threats to the CI. *Id.*

Even if such evidence was relevant, Appellant contends the evidence was more prejudicial than probative. *Id.* at 16. Appellant maintains that such evidence improperly confused or distracted the jury from whether he was guilty or innocent. *Id.* at 17. Appellant also takes issue with the Commonwealth's suggestion that such evidence was a fair response to his

opening statement in which he takes issue with the Commonwealth's failure to call the CI as a witness.[5] *Id.*

The standard of review for an issue regarding the admission of evidence is well-settled:

> the admissibility of evidence is within the sound discretion of the trial court and we will not reverse absent an abuse of discretion. . . . An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Leap*, ___ A.3d ___, ___, 2019 WL 5483726, *3 (Pa. Super. 2019) (citations and quotation marks omitted).

Pennsylvania Rule of Evidence 103 provides that in order to preserve an evidentiary issue for appellate review, a party must timely object and state "the specific ground, unless it was apparent from the context." Pa.R.E. 103(a)(1)(B); *see also* Pa.R.A.P. 302(a). In *Commonwealth v. Lopez*, 57 A.3d 74 (Pa. Super. 2012), this Court stated as follows:

---

[5] As noted above, the trial court's Rule 1925(b) opinion reasoned that Officer Mouzon was permitted to testify about general safety concerns regarding confidential informants because Appellant's counsel had argued in "her opening **and closing** statements that the Commonwealth should have called the CI to testify and that by not doing so, the police possibly were fabricating charges and were denying [Appellant] his right to confrontation." Trial Ct. Op. at 6. The trial court's reliance on Appellant's trial counsel's **closing** statement as justification to overrule Appellant's **mid-trial** objection is unclear. In any event, the trial court failed to state its rationale in overruling Appellant's objection to testimony about the safety concerns of CIs in general.

A party complaining, on appeal, of the admission of evidence in the court below will be confined to the specific objection there made. If counsel states the grounds for an objection, then all other unspecified grounds are waived and cannot be raised for the first time on appeal. ***Commonwealth v. Arroyo***, 555 Pa. 125, 142, 723 A.2d 162, 170 (1999); ***Commonwealth v. Stoltzfus***, 462 Pa. 43, 60, 337 A.2d 873, 881 (1975) (stating: "It has long been the rule in this jurisdiction that if the ground upon which an objection is based is specifically stated, all other reasons for its exclusion are waived, and may not be raised post-trial"); ***Commonwealth v. Duffy***, 832 A.2d 1132, 1136 (Pa. Super. 2003), *appeal denied*, 577 Pa. 694, 845 A.2d 816 (2004) (stating party must make timely and specific objection to preserve issue for appellate review).

This Court has deemed an appellate claim that testimony constituted inadmissible hearsay waived[,] where[] at trial, counsel merely said without this explanation "Objection."

***Lopez***, 57 A.3d at 81-82 (some citations omitted). We have overlooked such a deficiency if the nature of the objection was apparent from the context, particularly if the trial court ruled on it. ***See*** Pa.R.E. 103(a)(1)(B).

In any event,

[t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. An evidentiary error of the trial court will be deemed harmless on appeal where the appellate court is convinced, beyond a reasonable doubt, that the error could not have contributed to the verdict.

***Commonwealth v. Manivannan***, 186 A.3d 472, 480 (Pa. Super. 2018) (citations omitted and some formatting altered). "[A]n error cannot be held harmless unless the appellate court determines that the error could not have contributed to the verdict. Whenever there is a reasonable possibility that an error might have contributed to the conviction, the error is not harmless."

***Commonwealth v. Story***, 383 A.2d 155, 164 (Pa. 1978) (citation and quotation marks omitted).

> [F]actors to be considered in weighing harmlessness of error include: (1) whether error was prejudicial, and if so, whether it was *de minim*[*i*]*s*; (2) whether erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to erroneously admitted evidence; and (3) whether evidence of guilt was so overwhelming, as established by properly admitted and uncontradicted evidence, that prejudicial effect of error was insignificant.

***Commonwealth v. DeJesus***, 880 A.2d 608, 614 (Pa. 2005) (citation omitted and some formatting altered).

Initially, we note that Appellant never filed a motion *in limine* to preclude testimony about the safety concerns of CIs **in general**. As noted above, Appellant filed a motion *in limine* to preclude specific testimony about the safety concerns of CI 1079 in particular. Mot. *in Lim.*, 8/19/18, at 1. Indeed, Appellant detailed the particular testimony he wanted precluded. ***See id.***

But in response to Appellant's motion *in limine*, the Commonwealth countered that it would not introduce **specific** testimony about CI 1079. ***See*** N.T., 8/21/18, at 10. Rather, the Commonwealth claimed Officer Mouzon would testify "about what happens to confidential informants, generally, when their identity is exposed." ***See id.*** at 11. Appellant did not object to the Commonwealth's notice of its intention to present such general testimony and therefore failed to preserve his claim for appellate review. ***See id.*** at 9-12.

- 12 -

In any event, the trial court ruled on Appellant's objection at trial. Unfortunately, Appellant did not state the basis for his objection at trial. **See** N.T. Trial, 8/22/18, at 42. Appellant did not specifically object on the basis of relevance or on the basis that the disputed testimony was more prejudicial than probative. **See id.** The trial court, similarly, did not state its basis for overruling the general objection. **See id.**

It is not clear to this Court whether the trial court was overruling Appellant's objection on the basis of relevance under Pa.R.E. 402 or that the proffered evidence was more probative than prejudicial under Pa.R.E. 403. Appellant raised both arguments in his direct appeal. Because of Appellant's lack of specificity in stating the basis for his trial objection, he has waived the issue for failure to preserve. **See Lopez**, 57 A.3d at 81-82.

Even if Appellant preserved his objection to the testimony about the general safety concerns of all CIs, Appellant failed to establish reversible error by demonstrating he was significantly prejudiced by the testimony.[6] **See DeJesus**, 880 A.2d at 614. As established at trial, two police officers testified that they saw the CI purchase drugs from Appellant. Officers Cruz and Stubbs

---

[6] Further, as set forth above, Appellant moved to preclude **specific** testimony about the safety concerns of CI 1079 in particular, **see** Mot. *in Lim*., 8/19/18, at 1, not **general** safety policies regarding all CIs, as the trial court reasoned. **See** Trial Ct. Op. at 7. The trial court also erred when it stated that Appellant did not file a motion to reveal the CI's identity. **See id.** at 8 n.1. Appellant did so on March 1, 2018.

testified about executing a search of Appellant's residence and recovering contraband. **See generally** Trial Ct. Op. at 2-6. In addition, Officer Cruz testified that contraband was recovered from Appellant's person. **See id.** We note that Appellant did not challenge the admission of the contraband into evidence on appeal. For these reasons, we affirm.

Judgment of sentence affirmed.

Judge Lazarus joins the memorandum.

Judge McLaughlin files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/14/20